**SYN, INC., Appellant–Respondent,**

v.

**Elizabeth A. BEEBE, Respondent–Appellant.**

**Nos. WD 64552, WD 64553.**

Missouri Court of Appeals, Western District.

June 27, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2006.

Application for Transfer Denied Sept. 26, 2006.

Thomas R. Larson, Leawood, KS, for appellant-respondent.

Jack T. Bangert, Kansas City, MO, for respondent-appellant.

Before LOWENSTEIN, P.J., ELLIS and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

## I. FACTS

This appeal arises from an action for contribution by Syn, Inc., formerly Synergy, Inc. ("Syn"), a propane gas supplier, and Elizabeth Beebe ("Beebe"), the owner and landlord of a mobile home that suffered a gas explosion. The heart of the issue on appeal is instructional error. The facts remain hotly contested. Both parties have appealed.

Beebe owned a trailer on a parcel of land in Warsaw, Missouri. The mobile home was connected to a propane gas tank and delivery system installed by Syn. The propane system had two regulators to reduce the pressure of gas coming out of the tank into the mobile home. The first regulator was installed on the tank, the second on the outside of the trailer home.

In September 1991, Beebe's tenants reported difficulty keeping the furnace pilot light lit and were concerned about the occasional smell of gas. To what degree Beebe was aware of the potential problem with the gas system is unclear from the record. Beebe engaged the services Eugene Greg Markle ("Markle"), an electrician and heating and cooling technician, who installed new furnaces. Markle replaced the thermocouple on the furnace.

When tenants reported that the pilot light would not stay lit in March 1992, Beebe again engaged Markle. Markle checked the internal gas fitting and appliances, cleaned the furnace with a shop vac, checked the pilot light and replaced the thermocouple. Markle also pressure checked the system and performed soap bubble tests on the fittings inside and below the trailer. Whether he did so at the

request of Beebe or the tenant and whether this was the extent of his activities was at issue at trial.

Doug Sullentrop rented the trailer from Beebe beginning May 1992. On December 5, 1992, an explosion destroyed the mobile home. Sullentrop sustained injuries from which he died twenty-two days later. Sullentrop's family brought a wrongful death action against Syn. Beebe was not sued by the family nor joined in the action by Syn. Beebe brought suit against Syn for property damage related to the trailer in December 1997. Syn counterclaimed for indemnity in 1998. Syn and Beebe agreed that the counterclaim for indemnity was not ripe until a resolution of the wrongful death suit was reached. In August 1999, Syn settled the wrongful death claim for $900,000. Upon settlement, Sullentrop's family executed a release of claims against any and all parties. In June 2001, Syn amended its counterclaim to seek recovery from Beebe under two theories: (1) contribution based on the negligence of Markle, and (2) contractual indemnity.

Syn sought contribution from Beebe based on the landlord liability under an exception to the general rule that landowners are not liable for negligence of independent contractors. This exception applies only where the "harm results from the negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of his contract." *Bowles v. Weld Tire Wheel, Inc.*, 41 S.W.3d 18, 24 (Mo.App.2001). Syn claimed that it was the negligent acts of Markle, an independent contractor hired by Beebe to engage in an inherently dangerous activity, that either led to or contributed to the damages suffered by Sul-

lentrop. Under this theory, Syn claimed Beebe should be responsible to Syn for all or part of the settlement it made with the Sullentrop family.

## II. Procedural Posture

This appeal arises from the June 2002 suit for contribution.[1] Investigators had concluded that the cause of the explosion was related to the orientation of the second-stage regulator installed outside the trailer. Because the vent was positioned facing upward, rainwater entered the regulator and froze, permitting too much gas to enter the mobile home. The accumulation of gas led to the explosion that killed Doug Sullentrop. Syn contended Markle had adjusted or changed the second stage regulator; Beebe argued that Markle had done nothing more than change the furnace thermocouple and soap the lines looking for a leak.

The jury rendered the following verdicts:

Verdict A: On the claims of [Syn] for assessment of the proportions of fault for the settlement paid to the Sullentrop plaintiffs, we, the undersigned jurors, find: [Syn] is 80% at fault, Greg Markle is 20% at fault.

Verdict B: We, the undersigned jurors find: That Greg Markle was hired by Elizabeth Beebe to conduct an inherently dangerous activity.

Verdict C: We, the undersigned jurors find: That Elizabeth Beebe did reserve to herself the exclusive right to perform maintenance and repairs on the propane system and appliances at the mobile home.

1. As the parties agreed that the property damage to the trailer was a fixed amount and to abide by the percentage of fault assessed by the jury, the parties were realigned in this contribution suit to reflect Syn as the plaintiff and Beebe as the defendant.

Verdict D: We, the undersigned jurors find: That amount of settlement paid by [Syn] was reasonable.

Syn then sought prejudgment interest, attorneys' fees, expenses, and costs associated with defending the underlying wrongful death case. After a hearing, the trial court applied the percentage fault assessed to Markle to award a judgment for contribution against Beebe in the amount of $180,000. The court denied Syn's motion for prejudgment interest, expenses, and costs but entered judgment for Syn for twenty percent of the attorneys' fees directly related to the settlement activities amounting to $1,400.[2]

On appeal, Syn raises two points touching the denial of prejudgment interest. Beebe cross-appeals raising issues of instructional error in four points and the denial of the Motion for Judgment Notwithstanding the Verdict in its final point. This opinion initially addresses Beebe's cross-appeal.

### III. ANALYSIS

#### A. INSTRUCTIONAL ERROR

■■■ Whether a jury is properly instructed is a matter of law subject to *de novo* review by this court. *Boggs, ex rel Boggs v. Lay*, 164 S.W.3d 4, 20 (Mo.App. 2005). The court will determine if the instruction is supported by substantial evidence by viewing the evidence in a light most favorable to the instruction and disregard contrary evidence. *M.C. v. Yeargin*, 11 S.W.3d 604, 615 (Mo.App.1999). The party challenging the instruction must show that the instruction misled, misdirected, or confused the jury, and that prejudice resulted from the error. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d

454, 459 (Mo. banc 2006). A trial court's instructional error is reversible if the error substantially prejudiced a party. *Wiskur v. Johnson*, 156 S.W.3d 477, 480 (Mo.App. 2005).

#### 1. MISSOURI APPROVED INSTRUCTIONS

■■■ Supreme Court Rule 70.02(b) directs the exclusive use of the Missouri Approved Instructions whenever an approved instruction is applicable to the case. The law is well-settled that where an MAI instruction applies to the case, the use of such instruction is mandatory. *Clark v. Mo. & N. Ark. R.R. Co.*, 157 S.W.3d 665, 671 (Mo.App.2004); *Meredith v. Mo. Pacific R.R. Co.*, 467 S.W.2d 79, 82 (Mo.1971) ("[i]f the Missouri Approved Instructions include an instruction which correctly states the substantive law [governing the case], the approved instruction must be given"). In insisting that the appropriate MAI be followed, the Supreme Court of Missouri has explained that use of the MAI is key to the integrity of the court system. *Brown v. St. Louis Pub. Serv. Co.*, 421 S.W.2d 255, 258 (Mo. banc 1967). "MAI instructions, promulgated and approved by the Supreme Court, are authoritative if applicable to the factual situation . . . this court, as well as the trial court, is bound by them as surely as it is bound by Supreme Court cases and rules." *Lindsay v. McMilian*, 649 S.W.2d 491, 493–94 (Mo. App.1983).

■■■ If a submitted instruction deviates from MAI, the appellate court performs a four step analysis. *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 329 (Mo.App. 2000). First, if the MAI prescribes a particular form of instruction, submission of that instruction is mandatory. *Id.* If the

---

**2.** Syn's claim for contractual indemnity is not at issue on appeal and is not addressed in the facts of this case. Nor does the appeal touch

Beebe's property damage claim for which she was awarded $10,000.

appropriate MAI instruction is not used, prejudicial error is presumed.[3] *Id.* Second, the proponent of the instruction bears the burden of demonstrating nonprejudice. *Murphy v. Land,* 420 S.W.2d 505, 507 (Mo.1967). The presumed prejudice prevails unless the proponent makes it "perfectly clear" that no prejudice ensued. *Id.* Third, the appellate court determines if any prejudicial effect is created. *Lay,* 37 S.W.3d at 329. Finally, to be reversible, the error must materially affect the merits of the case. *Id.*

## 2. EMPLOYER LIABILITY FOR NEGLIGENCE OF INDEPENDENT CONTRACTOR

### A. MAI APPLICABLE TO THE CASE

In its suit, Syn sought contribution or contractual indemnity from Beebe for all or part of the wrongful death settlement outlay. In order to hold Beebe responsible for the activities of Markle, however, Syn must demonstrate that the activities for which Beebe hired the independent contractor fall into an exception for independent contractors hired to perform an inherently dangerous activity. The MAI on point for such a case is 31.15 "Verdict Directing—Inherently Dangerous Activity—Liability of Employer of Independent Contractor," which states:

Your verdict must be for plaintiff and against [employer of independent contractor] if you believe:

First, [the allegedly inherently dangerous activity] was inherently dangerous activity, and

Second, during such activity, [independent contractor] either;

Failed to [special precaution independent contractor failed to take], or

Failed [alternative failure], and

Third, [independent contractor], in one or more respects submitted in Paragraph Second, was thereby negligent, and

Fourth, such negligence and the danger inherent in such activity combined to directly cause damage to plaintiff.

Paragraph First, identifies the task for which the independent contractor was hired and asks the jury to determine whether or not this activity is inherently dangerous. The second paragraph establishes that the independent contractor had a duty to take special precautions, predicated on a finding of an inherently dangerous activity in the first paragraph, and breached this duty by failing to take the required precautions. Duty and breach in the second paragraph lead to the finding of negligence on the part of the independent contractor in paragraph Third. Finally, paragraph Fourth links the negligence to the damages establishing the causation element.

■■ This instruction provides a series of findings with the requisite legal connections to hold a landowner responsible for the negligence of an independent contractor. In order to find the landowner liable for the independent contractor's actions, the jury must determine that the landown-

---

3. Even slight deviations from MAI have been found sufficient to warrant a reversal. *Scheele v. Am. Bakeries Co.,* 427 S.W.2d 361, 366 (Mo.1968) (substituting of word "injury" for the word "damage" in the approved instruction was error); *Washington v. Sears Roebuck & Co.,* 585 S.W.2d 137, 138 (Mo.App.1979) (embellishing MAI instruction with nonprejudicial comments of trial judge was reversible error); *Holt v. Myers,* 494 S.W.2d 430, 441 (Mo.App.1973) (failure to use word "and" between first and second paragraphs of instruction was error); *Slyman v. Grantello,* 429 S.W.2d 282, 284 (Mo.App.1968) (giving plaintiff's instruction taken from MAI but including language not included in MAI and omitting the word "and" was error).

er hired the independent contractor to perform an inherently dangerous activity, the independent contractor was negligent in performing that activity, and the negligence caused damage to the plaintiff. To hold a landowner liable for the independent contractor's negligence, the nature of the activity for which the independent contractor was hired must be clearly tied to the resulting damage.

### B. INSTRUCTION AS SUBMITTED

Instead of submitting the applicable approved instruction discussed above at trial, the instruction on employer liability for independent contractors was submitted to the jury in two separate instructions. Instruction 8 and Instruction 10 broke apart the elements strung together by MAI 31.15 into two separate instructions.

### INSTRUCTION 8

In Verdict A you must assess a percentage of fault to Greg Markle if you believe:

First, when Greg Markle departed the mobile home in March, 1991, he knew or should have known that the vent on the second stage regulator was pointing up, and

Second, Greg Markle failed to take action to correct the position of the vents, and

Third, Greg Markle was thereby negligent, and

Fourth, as a direct result of such negligence, Doug Sullentrop died.

Instruction 8 addresses the Markle's negligence and liability for damages. These issues are found in paragraphs Second through Fourth of MAI 31.15 addressing duty, breach, and causation. However, Instruction 8 fails to identify the nature of the independent contractor's activities or determine that such activities were inherently dangerous. These determinations were submitted in a subsequent instruction, Instruction 10, which read:

Verdict B must be that Greg Markle was hired to conduct an inherently dangerous activity if you believe:

First, Elizabeth Beebe hired Greg Markle either

to troubleshoot a gas leak, or

to do whatever it took to find out what was wrong with the furnace at the mobile home, and

Second, the activity described in either of the respects submitted in paragraph, [sic] First was an inherently dangerous activity.

The term "inherently dangerous activity" as used in this instruction means an activity that necessarily presents a substantial risk of harm unless adequate precautions are taken.

■ Beebe argues that breaking apart and changing the order of the elements of MAI 31.15 is a clear deviation from the approved instruction; therefore, this error is presumptively prejudicial. The jury was asked to determine what activities Beebe hired Markle to perform and that these activities were inherently dangerous, only after they had found that Markle was negligent in the activities he in fact performed. The submitted instructions segregate the predicate finding of the scope and nature of the activity to another subsequent instruction severing the requisite legal connections between the elements of the instruction.

Syn points out that all the elements of MAI 31.15 are present when Instruction 10 and Instruction 8 are taken together as a whole. *Ahrens & McCarron, Inc. v. Mullenix Corp.*, 793 S.W.2d 534, 541 (Mo.App. 1990) ("Instructions must be considered and read together when assessing any claim of error"). Even if one were to

"package" the instructions, as done in some MAI Illustrations cited by Syn, the "packaged" instruction offered by Syn would still fail because it relegates a predicate finding to a subsequent instruction. *See* MAI 35.04

Additionally, Syn argues that all the elements of Instruction 10 and Instruction 8 have been approved by the Supreme Court in *Ballinger v. Gascosage Electric Cooperative*, 788 S.W.2d 506 (Mo.1990). In *Ballinger*, a worker brought suit against an electrical utility and its contractor for injuries suffered from an electric shock during the installation of poles and wires. *Id.* at 507–08. The contract governing the work provided that the work was to be done "hot," or while one line remained energized to prevent interruption of electrical service to customers. *Id.* at 508. The verdict directing instruction on vicarious liability read:

> In your verdict you must assess a percentage of fault to defendants Tel–Elec and Gascosage, whether or not plaintiff Brent Ballinger was partly at fault, if you believe:
>
> First, the installation of new conductors near the energized conductor at the Iberia rephase was an inherently dangerous activity, and
>
> Second, during said installation, Eazy either:
>
> > failed to maintain proper clearance between the hot phase and the B phase, or
> >
> > failed to keep the B phase under positive control, or
> >
> > failed to adequately ground the B phase, or
> >
> > failed to supply plaintiff Brent Ballinger with rubber gloves, and
>
> Third, in any one or more of the respects submitted in paragraph Second, Eazy was thereby negligent, and
>
> Fourth, such negligence directly caused or directly contributed to cause damage to plaintiff Brent Ballinger.
>
> The term inherently "inherently dangerous activity" as used in this instruction means an activity which necessarily presents a substantial risk of damage unless adequate protections are taken.
>
> In assessing any percentage of fault to Tel–Elec and Gascosage under this instruction, you must consider the fault of Eazy as the fault of both Tel–Elec and Gascosage.

Syn contends that the language of Instruction 10 tracks the language of the *Ballinger* instruction and such language is approved by the Supreme Court. However, this contention is misleading. The instruction in *Ballinger* was not challenged as deviating from MAI but rather for inconsistency with prior case law. Moreover, the *Ballinger* instruction submitted all of the elements to the jury in a single instruction rather than segregated into two separate instructions on vicarious liability. Finally, unlike this case, the scope of the work there was governed by a contract between the parties. Therefore, a predicate finding as to the nature of the activities for which the contractor was engaged was not required.[4]

4. After vociferously arguing that the instructions as submitted were the "clearest and best way" to instruct the jury, Syn goes on to state:
"The essence of the claim is as follows: (1) [Markle] was hired to check out the gas system ... (2) Addressing problems with the gas system is an inherently dangerous activity.... (3) [Markle] observed the second stage regulator. (4) [Markle] "replaced" the second stage regulator ... The danger of working with a propane system is explosion and fire ... that resulted in the death of tenant."
These elements, as laid out by Syn, closely track MAI 31.15, including the predicate finding of the scope of employment. If these

Given the failure to follow the form and track the elements of an applicable MAI instruction, the trial court erred in giving Instruction 10 and, by extension, Instruction 8, as the reverse order in which the instructions were given ask for a determination of negligence and then a finding of the scope of employment, contrary to the MAI form.

### 3. ROVING COMMISSION

Beebe additionally contends that Instruction 10 constitutes a "roving commission." A jury instruction is considered a "roving commission" when it "fails to advise the jury what acts or omissions of the party would constitute liability, when the instruction is too general, or where the instruction submits a question to the jury in a broad abstract way without any limitation to the facts and the law." *Williams v. Daus*, 114 S.W.3d 351, 371 n. 10 (Mo.App.2003). Where the instruction is supported by the evidence or submits ultimate facts that define the plaintiff's theory of the case, the instruction is not considered a roving commission. *Lindquist v. Scott Radiological Group, Inc.*, 168 S.W.3d 635, 653 (Mo.App.2005).

Here, Beebe contends that "troubleshoot a gas leak" and "do whatever it took to find out what was wrong with the furnace at the mobile home" are vague, general, and fail to direct the jury as the activities involved. However, a review of the record does not support this contention. The activities submitted to the jury in Instruction 10 were supported by the evidence. Nor were the activities as submitted so broad as to be confusing. Instruction 10 does not constitute a roving commission.

### 4. APPLICABLE DUTY OF CARE

Negligence is defined for the jury in Instruction 7. Beebe alleges that the trial court erred in giving Instruction 7 in that it used the incorrect standard of care. Instruction 7 follows MAI 11.02 [1996 Revision] section No. II, which reads: "The term 'negligent' or 'negligence' as used in this [these] instruction[s] means the failure to use that degree of care that a *very careful person* would use under the same or similar circumstances." (emphasis added). The Notes on Use indicate that MAI 11.02 Definition No. II "is appropriate where the law requires the highest degree of care." MAI 11.02 notes on use (1996 Revision). Beebe argues that the appropriate degree of care should have been "ordinary care" as used in MAI 11.02 Definition No. I. MAI 11.02 Definition No. I defines negligence as the "failure to use that care that an *ordinarily careful person* would use under the same or similar circumstances." (emphasis added).

The appropriate standard of care is a question of law. *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). Questions of law are subject to *de novo* review. *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 442 (Mo.App.2004).

Missouri law does not recognize degrees of negligence. *Fowler v. Park Corp.*, 673 S.W.2d 749, 755 (Mo. banc 1984). "Negligence is defined in terms of breach of duty owed by defendant. We recognize a breach of duty of ordinary care and of the highest degree of care[.]" *Davidson v. Otis Elevator Co.*, 811 S.W.2d 802, 803–04 (Mo.App.1991).

Negligence is usually defined as the failure to exercise ordinary care.

---

elements are in fact the "essence of the claim," they would have been more properly given in the appropriate MAI instruction, not

just because use of MAI is mandatory but because such a form more clearly lays out the appropriate issues.

*Stumpf v. Panhandle Eastern Pipeline Co.*, 354 Mo. 208, 189 S.W.2d 223, 228 (1945). However, in a relatively few situations, a duty to use the highest standard of care, or "that degree of care that a very careful person would use," has been imposed by statute or the courts. MAI 11.02 Definition No. II; *Fowler*, 673 S.W.2d at 755. Most commonly, the duty of the highest degree of care has been imposed on the operators of motor vehicles. § 304.010.1 RSMo (2005). The courts have also imposed a higher degree of care on electric companies, those who use firearms, or those who handle explosives. *Mrad v. Mo. Edison Co.*, 649 S.W.2d 936 (Mo.App.1983); *Wagstaff v. City of Maplewood*, 615 S.W.2d 608 (Mo.App.1981); *Lottes v. Pessina*, 174 S.W.2d 893 (Mo. App.1943).

Under Missouri law, repairmen have been held to the ordinary care standard. In *Davidson v. Otis Elevator Company*, an injured elevator passenger brought suit a negligence action against the maintenance company that serviced the elevators. 811 S.W.2d 802 (Mo.App.1991). The court noted that "[t]he ordinary or due care standard has been applied generally to defendants engaged in repair activities." *Id.* at 805 (citing *Harzfeld's, Inc. v. Otis Elevator Co.*, 114 F.Supp. 480, 484 (W.D.Mo.1953)). Because the instruction "prejudicially imposed upon the defendant a standard of care greater than required by law" the court ordered a new trial. *Id.*

█ Moreover, present Missouri case law only holds gas companies to the ordinary care standard. *Fields, v. Mo. Power & Light Co.*, 374 S.W.2d 17, 26 (Mo.1963); *Stephens v. Kansas City Gas Co.*, 354 Mo. 835, 191 S.W.2d 601, 609 (1946). In *Stephens*, plaintiff won a verdict for injuries sustained in a building explosion. *Id.* at 603. On appeal, the gas company alleged that the instruction imposing a degree of

highest care was instructional error. *Id.* at 608. The court agreed: "[t]he Gas Company was only required to use such degree of care as an ordinarily prudent person would exercise under like circumstances in dealing with such a dangerous commodity." *Id.* at 609.

Syn, a company that deals in propane gas, argues that someone repairing, servicing, or maintaining gas appliances should be held the highest degree of care or at least "something more" than "ordinary care." However, Syn cannot point to any Missouri case law to support such a contention. Nor can the court hold someone maintaining a gas appliance to a higher standard than that imposed on the gas company itself. Missouri law recognizes either ordinary care under the circumstances or highest degree of care under the circumstances. The "something more" than ordinary care proposed by Syn is not provided for in MAI whose use, as noted above, is mandatory rather than the "general preference" described by Syn.

In this case, Markle is an electrician and heating and cooling technician. The exact nature of the activities undertaken by Markle was a highly contested issue at trial. If, as Beebe argues, Markle was engaged to repair the furnace pilot light, then, as a repairman, the ordinary degree of care applies. Even if, as Syn contends, Markle was engaged to "troubleshoot a gas leak," the instruction as given would apply a higher degree of care to Markle than would have applied to the gas company Syn itself.

█ Under the facts of this case and Missouri law, the appropriate degree of care here is ordinary care. The trial court erred in giving the jury an instruction based upon the highest degree of care. However, establishing that the trial court erred is not sufficient to warrant a new trial. The error must prejudice the con-

testing party. Where a jury instruction imposes upon a party a standard of care higher than that required by law, prejudice is presumed. *Root v. Mudd*, 981 S.W.2d 651, 656 (Mo.App.1998). The presumption is rarely rebutted. *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 158 (Mo. banc 2000). The Missouri Supreme Court has consistently held that imposing upon a party a standard of care higher than the law requires is prejudicial, mandating a new trial. *Id.* (citing *Schlegel v. Knoll*, 427 S.W.2d 480, 485 (Mo.1968); *Toburen v. Carter*, 273 S.W.2d 161, 165 (Mo.1954); *Oesterreicher v. Grupp*, 119 S.W.2d 307, 308 (Mo.1938); *Borgstede v. Waldbauer*, 337 Mo. 1205, 88 S.W.2d 373, 376 (1935)).

Syn points to *Fowler v. Park Corp.*, to support its argument that even if the instruction was given in error, no prejudice ensued. 673 S.W.2d 749 (Mo. banc 1984). In *Fowler*, a worker sandblasting a hopper car in a train switching yard was injured when the car in which he was working was coupled to an engine and pulled away. *Id.* at 752. The worker fell through the bottom of the car and his legs were severed when he tried to climb out from beneath the car. *Id.* On appeal from the personal injury action, the court of appeals reversed and remanded based upon instructional error where the trial court applied a duty of highest care ("a very careful and prudent person") rather than that of ordinary care ("an ordinarily careful and prudent person"). *Id.* at 750–51, 755. A dissenting judge certified to the case to the Supreme Court perceiving conflict with prior precedent. *Id.* at 751.

Noting that the appellant did not object to the use of MAI 11.02 Definition No. II at trial and that the difference between the two instructions hinged on the words "very" and "ordinarily," the Supreme Court of Missouri stated: "We doubt very much that the variation in a single word was a circumstance which had a substantial effect on the jury." *Id.* at 755. The court acknowledged that there was precedent for reversal, if only to "keep counsel honest" in drafting instructions. However, the court declined to apply the precedent in the case. *Id.* at 755–56.

However, the court significantly narrowed the effect *Fowler* in *Lopez v. Three Rivers Electric Cooperative*, 26 S.W.3d 151 (Mo. banc 2000). In *Lopez*, a helicopter flew into power lines strung across a river by the Cooperative. *Id.* at 155. Survivors of the two victims brought a wrongful death suit against the electric cooperative that owned the lines. *Id.* The Supreme Court of Missouri found that the trial court erroneously applied the highest degree of care to the electric cooperative. *Id.* at 158. As the accident did not involve the dangerous nature of electricity, ordinary care was the proper standard. *Id.*

In so doing, the court noted in a footnote that *"Fowler* is distinguishable. In *Fowler*, because the appellant failed to preserve its instructional error challenge, this Court declined to apply the presumption of prejudice ... *Fowler*, therefore, merely eliminated the opportunity for sandbagging. Specifically, *Fowler* sought to prevent a party faced with an erroneous instruction from waiting without objecting so that they could request a new trial only in the event the jury returned an unfavorable verdict.... Three Rivers, unlike Park Corporation, timely and specifically objected." *Id.* at 158 n. 4 (citations omitted).

As discussed below, unless the error is properly preserved in the trial court, the appellate court cannot review for error nor apply a presumption of prejudice if the incorrect duty of care is applied. In giving an instruction based on MAI 11.02 Definition No. II, the trial court erred in applying a higher duty of care than that re-

quired by law. However, the issue then becomes whether the error properly preserved, as in *Lopez,* or if the prejudicial error was waived for failure to properly preserve.

### B. PRESERVATION OF ERROR

 Having sorted through Beebe's contentions of instructional error, the court must now determine whether each of the contentions was preserved. Error raised on appeal must be properly preserved at trial. *Drury v. Mo. Pac. R.R. Co.,* 905 S.W.2d 138, 148 (Mo.App.1995). Proper preservation of error requires that objections be made at the instruction conference and renewed in a motion for a new trial. *Hatch v. V.P. Fair Found., Inc.,* 990 S.W.2d 126, 140 (Mo.App.1999). Objections must be specific; general objections are not sufficient to preserve error. Rule 70.03. The party objecting must "[state] distinctly the matter objected to and the grounds of the objection." *Id.* Unless specific objections are made at trial, the trial court cannot avert error or make an intelligent ruling on the issue. *Gamble v. Bost,* 901 S.W.2d 182, 188 (Mo.App.1995). The appellate court will not "convict a lower court of error on an issue that was not put before it to decide." *Smith v. Shaw,* 159 S.W.3d 830, 835 (Mo. banc 2005).

 Nor may a point on appeal expand or change the objection voiced at trial. *Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 387. The theory of the point on appeal must be the same as that of the trial objection. *Id.* "Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal." *Seidel v. Gordon A. Gundaker Real Estate Co.,* 904 S.W.2d 357, 364 (Mo.App.1995). Points not preserved on appeal may be reviewed for plain error at the court's discretion. *Smith v. White,* 114 S.W.3d

407, 412 (Mo.App.2003). However, the court rarely grants plain error review in civil cases. *Id.*

### 1. INSTRUCTION 8

 In the first point of her appeal brief, Beebe attacks Instruction 8 on the following grounds: (1) the instruction directs fault at a non-party, and (2) the instruction deviates from proper MAI. Beebe objected to the instruction at the conference, but she failed to raise either of these points. Beebe cannot change the theory of the objection upon appeal. Although the deviation from MAI with regard to Instruction 8 was error, Beebe failed to preserve this error for appellate review. Beebe's first point on appeal is denied.

### 2. INSTRUCTION 10

Beebe's second point on appeal claims that the trial court erred in giving Instruction 10 in that the (1) instruction failed to hypothesize an inherently dangerous activity, (2) the instruction constitutes a roving commission, (3) the contention that Markle was hired to "troubleshoot a gas leak" is not supported in the evidence, and (4) the instruction fails to track MAI omitting key elements of the pattern instructions.

 However, at the instruction conference, Beebe only objected to the conjunctive submission of the two activities, the absence of a definition for the word "troubleshoot," that the instruction gave the jury a roving commission, and hypothesized activities that were not inherently dangerous. The only objection preserved from trial to appeal is the contention that the instruction constitutes a roving commission, a point denied in the discussion above. The failure to track MAI, although error as discussed above, is not preserved for appellate review and this court must disregard this point on appeal.

### 3. INSTRUCTION 12

Beebe failed to preserve any points on appeal regarding Instruction 12. Instruction 12 is not discussed above nor can this court review the error raised with regard to this instruction. In not properly preserving the error alleged in Instruction 12, Beebe has waived appellate review of the claimed error.

### 4. INSTRUCTION 7

■ At the instruction conference, Beebe objected arguing that Instruction 7 "hypothesized the incorrect degree of care under the facts of the case" and that ordinary care was the correct standard. This objection was properly raised both at the instruction conference and in the motion for a new trial. Beebe did not waive this claim of error and does not ask for any modification of the instruction beyond the objection voiced at trial. Beebe objected to Instruction 7, argued that the appropriate standard of care was ordinary care, reiterated that objection in the motion for a new trial, and raised the point on appeal. As such, the error was preserved and properly before this court.

The trial court erred in giving Instruction 7 as it imposed a higher degree of care than that required by law. Beebe properly preserved the error in Instruction 7 for review by this court. The error constitutes prejudicial error; Beebe is entitled to a new trial. As the instructional error proves dispositive, this court need not reach Beebe's last point on appeal, nor Syn's claims for prejudgment interest.

Judgment is reversed and remanded for a new trial.

All concur.