

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **MARK LARSEN,** | **WD78609 Consolidated with WD78622** |
| **Appellant-Respondent,** | |
| v. | **OPINION:** |
| **UNION PACIFIC RAILROAD COMPANY,** | **AUGUST 23, 2016** |
| **Respondent-Appellant.** | |

**Appeal from the Circuit Court of Buchanan County, Missouri
The Honorable Randall R. Jackson, Judge**

**Before Division One: Anthony Rex Gabbert, P.J., Thomas H. Newton, and Alok Ahuja, JJ.**

Mark Larsen appeals the circuit court's grant of Union Pacific Railroad Company's Motion for New Trial and/or Review for Plain Error Based on the Discovery of Juror Nondisclosure. Larsen asserts four points on appeal. First he contends that the circuit court erred in granting Union Pacific's motion for new trial because there is no competent evidence that Juror LS intentionally failed to disclose his union membership in that it is unclear what Union Pacific was seeking in its *voir dire* question, was not established that Juror LS did not attempt to respond, and Larsen was prevented from adducing testimony of Juror LS regarding his understanding of the question. Second, Larsen contends that the circuit court erred in granting Union Pacific's motion for new trial because Union Pacific's claim of juror nondisclosure was untimely in that it was made well after the deadline for raising a claim of error and encourages

post-trial witch hunts.  Third, Larsen contends that the circuit court erred in granting Union Pacific's motion for new trial because the testimony of David A. Giles, Ph.D. is demonstrably not credible in that it is internally inconsistent and self-contradictory.  Finally, Larsen claims that the court erred in granting Union Pacific's motion for new trial because the alleged nondisclosure by Juror LS was not prejudicial in that his union membership had little connection to the case and no bearing on his qualifications to act as a juror.

Union Pacific cross-appeals contending that the circuit court erred in denying its motions for directed verdict and judgment notwithstanding the verdict arguing that Larsen failed to make a submissible case for negligence under the Federal Employers' Liability Act (FELA) because Larsen failed to present substantial evidence that Union Pacific had actual or constructive notice of any supposed dangerous characteristics of the crane that Larsen claims caused his injury, and that evidence was a critical element of a claim under the FELA.

We affirm the circuit court's judgment granting Union Pacific's motion for new trial, and affirm the circuit court's judgment denying Union Pacific's motions for directed verdict and judgment notwithstanding the verdict.

**Larsen's Appeal**

**Factual Background**

We first address Larsen's points on appeal.  The facts, in the light most favorable to the circuit court's judgment and as relevant to Larsen's points on appeal, are as follows.  On May 6, 2013, Larsen, an employee of Union Pacific and member of a labor union, filed his original petition alleging that he was injured when he fell from a ladder while working for Union Pacific. The case went to trial on December 15, 2014.  On that date, a jury panel was called and *voir dire*

was conducted. Juror LS was a member of that jury panel, and eventually became a member of the jury in the case. During *voir dire,* LS was seated in Row 2, Seat 16.

The court instructed the panel at some length regarding the panel member's rights and responsibilities as potential members of a jury. Specifically, the court told the panel of the importance of honest and complete answers; that if any member of the panel did not understand a question during *voir dire,* he or she needed to raise a hand and it would be clarified; that if they did not have an affirmative answer to any question asked, the failure to raise their hand would be the same as affirming under oath that the question did not apply to them; and that if many hands were raised at once, the panel members could lower their hands, and examination would be conducted row by row. The court added: "But be sure we don't pass your row and pass you without getting your hand up and getting your response on the record."

The court further instructed the panel that, if anyone was experiencing any hardships that would make them unable to participate in the proceedings, they should bring that to the court's attention.

During *voir dire,* counsel for Union Pacific inquired:

As you understand this is a claim by Mr. Larsen against Union Pacific for some injuries. This is not a labor dispute. But it is a dispute between an individual who happens to be the member of a labor union and a railroad company. Is there anyone else out here who is a member of a labor union? Okay, I see a few hands. Anybody in the front row? I don't see any hands in the front row or the second row. Third row, okay? Let's go ahead and stick with the third row. Is it [Venireman D]?

Two panel members raised their hands. Counsel for Union Pacific proceeded to question the two panel members regarding the details of their affiliation with labor unions and how it would impact their ability to serve fairly and impartially on a jury in a case involving an on-the-job injury to a union member. Venireman D responded that he was a member of United Food and

3

Commerce Workers, UFCW, and responded to questions regarding that membership. Venireman M expressed an affiliation with the Sheet Metal Workers Union. After questioning these veniremen, counsel for Union Pacific inquired, "I think we've covered all the rows, but I just wanted to make sure. I see no further hands as far as labor unions. How about let's broaden the search to husbands or wives, anyone who has a husband or wife who is a member of a labor union?" Counsel for Union Pacific proceeded to question potential jurors who raised their hand in response to that question. The record reflects that, at no time during this process did Juror LS raise his hand or otherwise indicate that he was a member of a labor union.

Throughout the remainder of the *voir dire* process, counsel for both parties questioned the panel regarding any biases or prejudices that would lead any member of the panel to favor one side or the other. While several venire members did respond, Juror LS provided no response. Both the court and counsel for each party questioned the panel regarding any personal hardships that they might be experiencing that would impact their ability to effectively serve on the jury. Juror LS provided no response to any of these questions nor any other questions posed throughout *voir dire*.

At the conclusion of *voir dire,* both Larsen and Union Pacific requested strikes for cause and made peremptory strikes. Neither side struck Juror LS and he became one of the twelve-person jury that considered and ultimately decided the case. The jury panel was sworn, and the trial proceeded for the next 5 days, from December 15, 2014 to December 19, 2014. On December 19, 2014, the jury began its deliberations, and later returned a verdict in favor of Larsen, assessing Larsen's damages to be $3,200,000. Juror LS participated in the deliberations and signed the verdict form awarding damages to Larsen. On December 29, 2014, the circuit court entered its Judgment based on the jury's verdict.

4

On January 28, 2015, Union Pacific filed a timely "Motion for New Trial or, Alternatively, for Remittitur, together with Suggestions in Support." On that same date, Union Pacific also timely filed a "Motion for Judgment Notwithstanding the Verdict, and Suggestions in Support." On January 29, 2015, counsel for Union Pacific requested that those motions be scheduled for hearing. The motion hearing was scheduled for March 3, 2015.

On February 26, 2015, Union Pacific filed a "Motion for New Trial and/or Review for Plain Error Based on the Discovery of Juror Nondisclosure, and Suggestions in Support." In that motion, Union Pacific alleged that a manifest injustice or miscarriage of justice had occurred because Juror LS had intentionally concealed that he was a member of a labor union and, even if the nondisclosure was unintentional, Union Pacific was prejudiced because the information withheld had a bearing on the juror's ability to fairly evaluate the evidence. Union Pacific alleged that it had retained Dr. David Giles, a jury researcher and consultant, to assist Union Pacific in learning from the jurors what influenced their decision in the case. The motion alleged that Dr. Giles spoke with Juror LS on January 31, 2015, and during that conversation Juror LS characterized himself to Dr. Giles as the informal leader of the jury who had taken an active role in leading deliberations. The motion alleged that, when asked what factors were most significant to him, Juror LS volunteered, "Look, I am a union guy" and identified himself as a member of a labor union at his place of employment. The motion alleged that Juror LS told Dr. Giles that Larsen "had my vote right off." The motion alleged that Juror LS emphasized to Dr. Giles the point that Larsen was hurt at work and that Union Pacific was trying to find a way not to pay him. Union Pacific sought "plain error" review pursuant to Missouri Supreme Court Rule 78.08 and informed the court of its intention to raise the juror nondisclosure issue at the March 3, 2015 hearing on Union Pacific's Motion for New Trial.

5

On March 3, 2015, the court conducted a hearing on Union Pacific's Motion for New Trial or in the Alternative Remittitur and Union Pacific's Motion for JNOV. At this hearing, Union Pacific raised the issue of juror non-disclosure and reiterated Union Pacific's earlier request for plain error review. Union Pacific specifically requested that the court conduct an evidentiary hearing into Juror LS's alleged non-disclosure of his union membership, and in support of this request, Union Pacific submitted relevant portions of the *voir dire* transcript as well as the affidavit of Dr. Giles. After review, the court determined that the question regarding labor union membership was a clear question and that an evidentiary hearing was warranted to determine whether a nondisclosure by Juror LS had occurred.

On March 9, 2015, Larsen filed a "Supplemental Brief on the Timeliness of Union Pacific's Motion for New Trial or Review for Plain Error Based on Juror Nondisclosure." Therein, Larsen argued that plain error review of the juror nondisclosure issue was unwarranted because Union Pacific failed to explain why it did not obtain the nondisclosure information prior to the Rule 78.04 thirty-day deadline for moving for a new trial, and delayed filing a motion for plain error review for more than three weeks after Dr. Giles had spoken with Juror LS and had discovered the purported nondisclosure. Union Pacific replied to that brief indicating, among other things, that Union Pacific raised the issue of the nondisclosure as soon as it reasonably could.

On March 13, 2015, the court issued an order granting Union Pacific leave to subpoena and make inquiry of Juror LS regarding the alleged nondisclosure. An evidentiary hearing was scheduled for April 1, 2015, to address Juror LS's recollection and understanding of the labor union *voir dire* question and his reason or intent for failing to respond to the question. At that hearing, Juror LS testified and admitted that he is and was at the time of trial a member of United

Food and Commercial Workers, UFCW. Juror LS testified that, during the jury selection process he had not forgotten that he was a member of a union. He testified, however, that he had unexpectedly lost his mother thirteen days prior to trial so he had a lot of things on his mind at that time. He testified that he did not bring his mother's recent death to the court's attention. He testified that during the jury selection process he was hoping that he would not get selected for the jury. He stated that he did not understand how the jury selection process worked and was hoping that if he did not answer questions it would be less likely that he would be selected as a juror. Juror LS testified that he did not specifically recall the union membership questions during *voir dire*, but did recall answering no questions during *voir dire*. When asked by the court if he was paying attention to anything that was going on during the questioning process, Juror LS stated: "Like I said, I was going through a lot at that time and, honestly, I was here but I wasn't." When Juror LS was reminded that he had not brought his personal difficulties to anyone's attention, Juror LS stated that he "did not expect to get picked out of 39 people." When the court asked Juror LS if it was possible that he did not intentionally answer some questions that pertained to him so that he would not be selected for service, Juror LS responded, "I suppose it's possible." Juror LS denied ever stating to Dr. Giles that he was a "union guy" or that Larsen "had my vote right off," and denied ever suggesting that he was the informal leader of the jury. Juror LS denied intentionally concealing information. He testified that he could not recall any specific questions that were asked during *voir dire*, but recalls being able to hear everything that was stated in the form of the questions and comments of the court at the time of *voir dire*.

Dr. Giles also testified at the evidentiary hearing. He testified that he had been hired by Union Pacific because Union Pacific did not completely understand how the jury arrived at its decision in the Larsen case. It was his task to speak with the jurors about things that were pivotal

in their jury decision-making.  He testified that he had no idea of the questions that had been asked of jurors during the *voir dire* process and was not directed or influenced in any way with regard to the types of questions that he asked the jurors when he interviewed them.  Dr. Giles testified that he did not specifically ask Juror LS whether he was a member of a labor union.  He testified that he asked Juror LS if there was a pivotal time in the trial in which he began to form some sort of idea about what the dispute was about.  Dr. Giles testified that, in response to that question, Juror LS stated, "Look, I'm a union man.  He had my vote right off."  Dr. Giles also testified that Juror LS had voluntarily characterized himself as the informal leader of the jury.

On April 22, 2015, the circuit court entered a "Judgment Granting Defendant's Motion for New Trial" due to "intentional, material, and prejudicial" juror nondisclosure.  Larsen appeals.

**Larsen's Point I**

In Larsen's first point on appeal[1] he contends that the circuit court erred in granting Union Pacific's motion for new trial because there is no competent evidence that Juror LS intentionally failed to disclose his union membership in that it is unclear what Union Pacific was seeking in its question, was not established that Juror LS did not attempt to respond, and Larsen was prevented from adducing testimony of Juror LS regarding his understanding of the question.

> A trial court has great discretion in determining whether to grant a new trial.  Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion.  An abuse of discretion occurs where the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.  It cannot be said that the trial court

---

[1]Union Pacific argues that Larsen's appeal should be dismissed due to various briefing deficiencies in violation of Rule 84.04(d).  In Larsen's reply brief Larsen admits to "some procedural deficiencies with his brief, including typographical and formatting errors," but disputes other alleged briefing deficiencies.  As we prefer to resolve an appeal on the merits of the case and can ascertain Larsen's arguments despite any alleged deficiencies, we proceed with review of Larsen's claims.  *See Payne v. Markeson*, 414 S.W.3d 530, 545 (Mo. App. 2013).

8

abused its discretion where reasonable persons could differ over the propriety of its ruling. Appellate courts should be more liberal in upholding a grant of a new trial than in awarding a new trial when the trial court denies the motion. However, the granting of a motion for a new trial can be an abuse of discretion where it is based on findings that are not substantially supported by the record.

*Precision Elec., Inc. v. Ex-Amish Specialties, Inc.*, 400 S.W.3d 802, 808 (Mo. App. 2013) (internal citations and quotation marks omitted).

Evaluation of a juror nondisclosure claim involves two steps. *J.T. ex rel. Taylor v. Anbari*, 442 S.W.3d 49, 56 (Mo. App. 2014). First, we review *de novo* whether the question posed was sufficiently clear. *Id.* If the question was insufficiently clear, then there has been no nondisclosure. *Id.* If clear, we then consider whether the nondisclosure was intentional. *Id.* "'Intentional nondisclosure occurs if: 1) there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable.'" *Id.* at 56-57 (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 644 (Mo. banc 2013). "The determination of whether the nondisclosure was intentional is reviewed for abuse of discretion." *Id.* at 56. "If the nondisclosure was intentional, prejudice is presumed; if the nondisclosure was unintentional, the party seeking a new trial must prove prejudice." *Id.* We weigh the evidence in the light most favorable to the trial court's order. *Precision Elec., Inc.*, 400 S.W.3d at 808.

Here, we find that the *voir dire* question posed to potential jurors regarding membership in a labor union was sufficiently clear. The question was prefaced with identifying Larsen, the plaintiff, as being in a labor union and then asked, "Is there anyone else out here who is a member of a labor union?" Given its clarity and directness, there exists no reasonable inability to comprehend the information solicited by this question. We find unpersuasive Larsen's

9

argument that Union Pacific somehow changed the nature of the question by asking additional questions after prospective jurors identified themselves as union members. The initial question was clear and, had Juror LS responded, he would have been the first to receive follow-up questions. Juror LS was located in the second row and the transcript indicates that no raised hands were noted in the front row or the second row; the first raised hand was noted in the third row. Beyond this, the colloquy that ensued with the first called-upon prospective juror with union affiliation should have highlighted to Juror LS his own connection to the question. When Venireman D was called upon in response to his raised hand he was asked, "Are you a member of a labor union?" He responded, "Yes, the UFCW." When asked what that stood for he responded, "United Food and Commerce Workers." This union is the same union that Juror LS testified at the evidentiary hearing that he was fully aware that he was a member of at the time of trial.

While Juror LS testified that he did not specifically recall any *voir dire* questions that were asked, he does recall answering no questions during *voir dire*, believing that he would be less likely to be selected for service if he answered fewer questions, and testified that it was possible that he intentionally did not answer some questions that pertained to him so he would not be selected for service. In light of this, we find no abuse of discretion in the circuit court's determination that the nondisclosure of Juror LS's labor union affiliation was intentional. "Venirepersons have a duty to answer all questions fully, fairly, and truthfully during *voir dire*. Failure to respond fully, fairly, and truthfully can deprive the parties of information needed to exercise peremptory challenges or challenges for cause to ensure an impartial jury is empaneled." *State v. Ess*, 453 S.W.3d 196, 203 (Mo. banc 2015). "An unequivocal question triggers a venireperson's duty to disclose information. A venireperson's silence to an

10

unequivocal question establishes juror nondisclosure, if the information is known to the juror."
*Id.* at 203-204. "[A] claimant seeking to prove intentional nondisclosure must establish that the venireperson is consciously aware of an objective fact and then fails to disclose that fact despite an unequivocal request to do so from the court or counsel." *Id.* at 210. Here, the record establishes that, at the time of *voir dire*, Juror LS was consciously aware that he was a member of a labor union, Counsel made an unequivocal request for disclosure of union membership, and Juror LS failed to disclose that fact. Consequently, we presume that Union Pacific was prejudiced by Juror LS's intentional nondisclosure and find that Larsen has failed to rebut this presumption.

Larsen's arguments against prejudice ignore the credibility determinations made by the trial court and to which we must defer. "Appellate courts defer on credibility determinations because the circuit court is in a better position to weigh the contested and conflicting evidence[.]" *Frazier v. City of Kansas*, 467 S.W.3d 327, 346 (Mo. App. 2015). "'The circuit court is able to judge directly not only the demeanor of witnesses, but also their sincerity and character and other [ ] intangibles that the record may not completely reveal.'" *Id.* (quoting *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014)). The determination of whether nondisclosure was intentional or unintentional is within the sound discretion of the trial court. *State v. Fuller*, 837 S.W.2d 304, 308 (Mo. App. 1992). Here, the circuit court found "that Juror LS's testimony at the hearing of April 1, 2015 lacked credibility" and "the testimony of Dr. David Giles, Ph.D., to be fully credible in all respects[.]" Based, in part, on the court's credibility determinations, the court concluded that Juror LS intentionally failed to disclose that he was a union member and that the intentional nondisclosure was material and prejudicial to the outcome of the case. These

11

findings are supported by the record. The circuit court did not abuse its discretion in granting

Union Pacific's motion for new trial. Point one is denied.[2]

## Larsen's Point II

In Larsen's second point on appeal he contends that the circuit court erred in granting

Union Pacific's motion for new trial because Union Pacific's claim of juror nondisclosure was

untimely in that it was made well after the deadline for raising a claim of error without

demonstrating that Union Pacific was not aware of it earlier, ambushed Larsen and encourages

post-trial witch hunts. Larsen argues that Union Pacific failed to establish that its failure to raise

the issue of jury nondisclosure prior to the deadline for a motion for new trial had elapsed was

not due to its own negligence and, therefore, plain error review was unwarranted. We find no

abuse of discretion.

Rule 78.08 authorizes the trial court, in its discretion, to consider plain errors affecting

substantial rights at a hearing on a motion for new trial, though not raised in the motion or

defectively raised, when the trial court finds that manifest injustice or miscarriage of justice has

resulted therefrom. Here, the circuit court expressly found plain error review under Rule 78.08

"necessary to prevent manifest injustice or a miscarriage of justice." With regard to the

timeliness of Union Pacific's request for plain error review the court stated:

> This Court finds [Union Pacific's] contention that it did not become aware of
> [Juror LS's] nondisclosure until after it had filed its original Motion for New
> Trial, and thus after the 30-day deadline for filing such motions, to be credible,
> and consistent with the testimony of Dr. Giles, who testified he first spoke with
> Juror LS and learned of his union affiliation on January 31, 2015. [Union

---

[2]Larsen's additional allegation that he was prevented from adducing testimony of Juror LS regarding his understanding of the labor union question is without support and without merit. Larsen asked the court at the evidentiary hearing if the court would "consider it relevant to hear [Juror LS] answer questions as to if he were asked those questions today what his understanding would be?" The court noted that it had already sustained an objection to that line of questioning as it called for speculation. Larsen argues on appeal that the court erred in preventing the questioning but fails to articulate how the court erred or provide support for this allegation.

Pacific's] raising this issue at the new trial hearing was entirely appropriate, and is in fact allowed and mandated by Rule 78.08.

Larsen does not contest the court's findings with regard to review being necessary to prevent a miscarriage of justice; Larsen's contention is solely that Union Pacific failed to prove that it could not have made its claim sooner. Yet, Larsen does not articulate how the circuit court abused its discretion in coming to the opposite conclusion which was supported by hearing testimony indicating that the juror nondisclosure information was not discovered until after the motion for new trial deadline. Dr. Giles first spoke with Juror LS about his union affiliation on January 31, 2015, and testified that he was not aware at that time of the significance of that discussion. Counsel for Union Pacific informed the court at the March 3, 2015, hearing on Union Pacific's timely motion for new trial that Counsel first learned of Juror LS's potential nondisclosure during a conversation with Dr. Giles roughly ten days to two weeks after Dr. Giles' January 31, 2015 conversation with Juror LS. Thereafter, counsel for Union Pacific ordered a copy of the *voir dire* transcript from the court reporter which was received on February 24, 2015. The Rule 78.08 motion for plain error review was filed on February 26, 2015. This was approximately one month after the Rule 78.04 motion for new trial deadline.

The circuit court found that Union Pacific did not unreasonably delay in bringing the nondisclosure to the attention of the court and we defer to the credibility determinations the court made in reaching that conclusion. Larsen has failed to prove that the circuit court abused its discretion in granting plain error review of the juror nondisclosure claims. Point two is denied.

### Larsen's Point III

In his third point on appeal Larsen contends that the circuit court erred in granting Union Pacific's motion for new trial because the testimony of Dr. Giles is demonstrably not credible in

13

that it is internally inconsistent and self-contradictory, and the trial court erred in finding it credible.[3]

"We give deference to the trial court's greater opportunity to judge the credibility of witnesses[.]" *Hopkins v. Hopkins*, 449 S.W.3d 793, 797 (Mo. App. 2014) (internal citations and quotation marks omitted). The court may choose to believe all, part, or none of the testimony of any witness. *Id.* We do not reweigh the evidence when a party appeals the motion court's grant of a motion for new trial; we focus only on whether the court's decision constitutes an abuse of discretion. *Norfolk Southern Ry. Co. v. Crown Power and Equipment, L.L.C.*, 385 S.W.3d 445, 452 (Mo. App. 2012) (overruled on other grounds by *Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013)).

We find no abuse of discretion here. Larsen attacks the court's finding "that Juror LS's testimony at the hearing of April 1, 2015 lacked credibility and that the testimony of David A. Giles, Ph.D. was credible in all respects" by focusing on pieces of Dr. Giles' testimony that Larsen believes is inconsistent with Larsen's cross-examination of Dr. Giles at the evidentiary hearing. These arguments as to Dr. Giles' alleged inconsistencies and lack of credibility involve matters all within the purview of the motion court and determinations that we will not second guess. Upon review of the record, we find no internal inconsistencies in Dr. Giles' testimony such as would suggest that the court abused its discretion in crediting his testimony, particularly with regard to the material issue of whether or not Juror LS was a union member. Beyond that, it was ultimately Juror LS's own testimony regarding his union membership and his conscious

---

[3]We note that Larsen makes several assertions in the argument portion of this point, including that Union Pacific improperly presented Dr. Giles' affidavit to impeach the jury's verdict, improperly introduced other evidence at the hearing, that Dr. Giles' testimony at the hearing was improper, and that Union Pacific turned the issue "into a kind of beauty contest between Mr. Giles and [Juror LS]." We address only the issue set forth in the point relied on. *Cordes v. Williams*, 201 S.W.3d 122, 131 (Mo. App. 2006).

14

decision to avoid answering *voir dire* questions in hopes of not being selected for the jury that led to the court's determination that purposeful nondisclosure had occurred. Point three is denied.

## Larsen's Point IV

In his fourth and final point on appeal, Larsen contends that the circuit court erred in granting Union Pacific's motion for new trial because the alleged nondisclosure by Juror LS was not prejudicial in that his union membership had little connection to the case and no bearing on his qualifications to act as a juror. We disagree. As discussed above in our analysis of Larsen's first point on appeal, Juror LS's nondisclosure was deemed intentional, and therefore prejudicial, and Larsen has not rebutted that presumption nor could he on the facts of this case. Dr. Giles' testimony and affidavit indicated that, in response to Dr. Giles asking Juror LS what significant factors affected his decision, Juror LS volunteered that he was "a union guy" at his place of employment and that Larsen "had my vote right off." Although Juror LS minimized his union membership at the evidentiary hearing, the court found Dr. Giles' testimony credible and Juror LS's testimony to lack credibility. Statements of jurors minimizing the effect of misconduct are entitled to very little weight. *Travis v. Stone*, 66 S.W.3d 1, 6 (Mo. banc 2002). Hence, not only is there a presumption of prejudice in this case based on Juror LS's intentional nondisclosure, but the record, viewed in the light most favorable to the court's order with accompanying credibility determinations, reflects that Juror LS's union membership did, in fact, influence his decision-making as a juror. Point four is denied.

We conclude, therefore, that the circuit court did not abuse its discretion in granting Union Pacific's motion for new trial in that the record supports (1) the court's conclusion that Juror LS intentionally failed to disclose his union membership, (2) the court's determination that

plain error review was appropriate under Rule 78.08, (3) the court's credibility determinations, and (4) the court's finding that prejudice resulted from Juror LS's intentional nondisclosure.

**Union Pacific's Cross-Appeal**

Union Pacific cross-appeals. In its sole point on appeal, Union Pacific contends that the circuit court erred in denying Union Pacific's motions for directed verdict and judgment notwithstanding the verdict because Larsen failed to make a submissible case for negligence under FELA. Union Pacific argues that Larsen failed to present substantial evidence that Union Pacific had actual or constructive notice of any supposed dangerous characteristics of the crane that Larsen claims caused his injury, and that evidence was a critical element of a claim under the FELA. We find no error.

"The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *Spalding v. Steward Title Guaranty Company*, 463 S.W.3d 770, 778 (Mo. banc 2015) (internal citation and quotation marks omitted).

> When reviewing a circuit court's denial of a judgment notwithstanding the verdict, this Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability. Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences. This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion.

*Id.* (internal citations and quotation marks omitted). We review this issue *de novo. Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 22 (Mo. App. 2014).

Larsen's action was filed and submitted to the jury under the FELA. The Act provides in pertinent part that:

16

> Every ... railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. "In passing on the submissibility of plaintiff's case, it must be remembered that, to the maximum extent proper, questions arising under the FELA shall be left to the jury. Further, little evidence is necessary to create a jury question on the issue of negligence." *Hertzler v. Burlington Northern R. Co.*, 720 S.W.2d 762, 766 (Mo. App. 1986). While FELA negligence exists if the employer knew or should have known that its standard of conduct was inadequate to protect its employee from injury, whether or not an employer should ordinarily anticipate or foresee danger in a given circumstance is for the jury to decide. *Id.*

Larsen alleged in his petition that, on December 15, 2010, and for many years prior thereto, he was employed by Union Pacific as a Machine Operator and Track Laborer. He further alleged that, on December 15, 2010, he was performing his required duties of installing Union Pacific's Safety Vision recording system on a track crane. While performing the installation and climbing down an attached ladder on the back of the track crane, Larsen lost his footing reaching for the lower rung and fell twelve feet to the ground, severely injuring his neck, back and internal organs. Larsen alleged that his injuries were directly caused by Union Pacific's negligence because Union Pacific failed to furnish and provide Larsen with a reasonably safe place to work, reasonably safe conditions for work, reasonably safe methods of work, and reasonably safe appliances for work. Larsen asked the jury to find that Union Pacific failed to provide reasonably consistent spacing between the steps on the back of the track crane, and that Union Pacific knew, or by using ordinary care could have known, of such condition and that it was not reasonably safe.

17

At trial, Larsen presented the testimony of Keith Vidal, a consulting safety engineer. He testified that he represented the American Society of Safety Engineers in the American Ladder Institute that developed standards on ladders. He testified that "standards essentially set the rules that set a minimum guideline of sometimes safety and sometimes construction." He testified that the American Society of Safety Engineers develop standards for the American National Standards Institute which promulgates safety requirements for workplace floor and wall openings, stairs and railing systems. He testified that when the American National Standards Institute approves standards, they then become known as an American National Standard and are used throughout the United States and the world. He testified that, with regard to ladder safety, particular standards of importance include the width of the ladder, something on the ladder that a person can hold on to, evenly spaced rungs, and securely affixed rungs.

Vidal testified that he was asked to assess the safety of the ladder system in this case. He reviewed pictures of the alleged faulty ladder during his testimony and pointed out inconsistent distances between steps in the ladder that ranged from thirteen inches apart to approximately twenty-one inches apart. He testified that ladders are generally required to have equal distance between successive rungs, and the inconsistent distances made the ladder in this case very dangerous. He testified that the ladder was approximately forty years old. Pictures of the ladder were entered into evidence.

We find, based on this evidence, that a reasonable juror could draw a reasonable inference that Union Pacific failed to provide reasonably consistent spacing between the steps on the back of the track crane that had been in Union Pacific's possession for forty years, and that Union Pacific knew, or by using ordinary care could have known, of such condition and that it was not reasonably safe. Union Pacific's point on its cross-appeal is denied.

18

**Conclusion**

We conclude that the circuit court did not abuse its discretion in granting Union Pacific's motion for new trial in that the record supports (1) the court's conclusion that Juror LS intentionally failed to disclose his union membership, (2) the court's determination that plain error review was appropriate under Rule 78.08, (3) the court's credibility determinations, and (4) the court's finding that prejudice resulted from Juror LS's intentional nondisclosure. Further, the circuit court did not err in denying Union Pacific's motions for directed verdict and judgment notwithstanding the verdict as Larsen made a submissible case for negligence under FELA.

We affirm the circuit court's ruling granting Union Pacific's motion for new trial.


_____
Anthony Rex Gabbert, Judge


All concur.


19