**Graeme and Katy ABBOTT,
Appellant–Respondents,**

v.

**MISSOURI GAS ENERGY,
Respondent–Appellant.**

**Nos. WD 74239, WD 74256.**

Missouri Court of Appeals,
Western District.

June 12, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 31, 2012.

Application for Transfer Denied
Sept. 25, 2012.

---

Diane Breneman, Stacey Dungan, Scott Bethune, Kansas City, MO, for Appellant–Respondent.

Lynn Hursh, Karrie Clinkinbeard, Kansas City, MO, for Respondent–Appellant.

Before JOSEPH M. ELLIS, P.J., JAMES EDWARD WELSH, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Judge.

While Graeme Abbott was repairing a furnace owned by ThyssenKrupp Access Corporation, the furnace exploded and severely burned Graeme Abbott. Two weeks prior to the explosion, Missouri Gas Energy (MGE) had received a customer odor call from ThyssenKrupp reporting a gas smell. In response to the call, MGE sent Bob Crawford, a temporary specialty worker, to ThyssenKrupp to conduct a customer leak investigation. After Crawford's investigation, Crawford reported to ThyssenKrupp that all was safe. After the furnace explosion, Graeme Abbott and his wife, Katy Abbott, sued MGE [1] alleging that MGE was negligent in that it failed to train Crawford to respond to an odor call as required by MGE policies and regulations, failed to conduct a thorough outside leak investigation, failed to conduct an inside leak investigation, failed to conduct a visual inspection of gas appliances including the heater, failed to locate the source of the odor when it responded to the odor notice, failed to conduct a repeat gas leak investigation at ThyssenKrupp, and failed to inspect the furnace to determine that it met industry codes and standards at the time MGE moved its meter at ThyssenKrupp in 1997. (Apdx.A658) The Abbotts also sued MGE for punitive damages and for loss of consortium.

After a jury trial, the jury assessed 70 percent fault to MGE and 30 percent fault to Graeme Abbott. Before the allocation of fault between the parties, the jury awarded $1,150,000 in compensatory damages and $375,000 in punitive damages to Graeme Abbott and $25,000 to Katy Abbott for loss of consortium. In accordance with the jury's verdict, the circuit court entered judgment of $1,197,500 against MGE in favor of the Abbotts ($805,000 and $375,000 to Graeme Abbott and $17,500 to Kathy Abbott) plus interest. After post-trial motions were heard, the circuit court entered an amended judgment and order, which (1) granted judgment in favor of MGE on the Abbotts' claim for punitive damages finding that the evidence was insufficient to support a finding that MGE's conduct was reckless or "tantamount to intentional wrongdoing," and (2) granted a reduction of the verdict to reflect the Abbotts' settlement with ThyssenKrupp pursuant to section 537.060, RSMo 2000. The Abbotts appeal, and MGE cross-appeals from the circuit court's judgment.

On appeal, the Abbotts raise three points of error: (1) the circuit court erred in entering judgment notwithstanding the verdict in favor of MGE on the punitive damages award, (2) the circuit court erred in granting MGE's post-trial motion for a reduction of the judgment in the amount of the Abbotts' pre-trial settlement with ThyssenKrupp, and (3) the circuit court erred in denying the Abbotts' motion to correct and amend the judgment with respect to the punitive damages award and the reduction of the judgment pursuant to section 537.060. In response to the Abbotts' appeal, MGE filed a cross-appeal

---

1. The Abbotts also sued ThyssenKrupp but settled their claims against ThyssenKrupp a week prior to trial.

asserting four points of error: (1) the circuit court erred in denying MGE's motion for directed verdict and motion for judgment notwithstanding the verdict because the Abbotts did not make a submissible case, (2) the circuit court erred in denying MGE's motion for new trial because the verdict was against the weight of the evidence, (3) the circuit court erred in denying MGE's motion for new trial because Instruction No. 6, the negligence instruction, was improper and prejudicial to MGE, and (4) the circuit court erred in denying MGE's motion for new trial based upon prejudicially received evidence.

MGE's third point in its cross-appeal is dispositive. Because Instruction No. 6 did not follow the applicable Missouri Approved Instruction (MAI) and misstated the applicable standard of care, we reverse the circuit court's judgment and remand for a new trial.[2]

■ "Whether a jury is properly instructed is a matter of law subject to *de novo* review by this court." *Syn, Inc. v. Beebe*, 200 S.W.3d 122, 128 (Mo.App.2006). To reverse on grounds of instructional error, the party challenging the instruction must show that the instruction misled, misdirected, or confused the jury. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 459 (Mo. banc 2006). Further, "[t]he party offering the erroneous instruction has the burden of showing that the erroneous instruction 'created no substantial potential for prejudicial effect.'" *Gorman v. Wal–Mart Stores, Inc.*, 19 S.W.3d 725, 730 (Mo.App.2000) (citation omitted). It is within the province of this court to determine the prejudicial effect of the erroneous instruction. *Id.*

■ The instruction at issue in this case defined the term "negligent" or "negligence" as "the failure to use ordinary care." The instruction further stated: "The phrase 'ordinary care' means such degree of care as an ordinarily prudent corporation would exercise under like circumstances in dealing with such a dangerous commodity." Indeed, Missouri case law recognizes that gas companies are held to the ordinary standard of care. *Syn*, 200 S.W.3d at 133; *Fields v. Mo. Power & Light Co.*, 374 S.W.2d 17, 26 (Mo.1963); *Stephens v. Kansas City Gas Co.*, 354 Mo. 835, 191 S.W.2d 601, 609 (1946).

In submitting this instruction, the circuit court stated on the record and out of the presence of the jury that it proposed to give Instruction No. 6 as submitted by the Abbotts and noted, "It is MAI 17.02, 11.07, and 11.10 modified by *Stephens v. Kansas City Gas Company*, 354 Mo. 835, 191 S.W.2d 601[.]" MAI 17.02 is the pattern verdict directing instruction used when multiple acts of negligence are submitted. MAI 11.07 provides the definition for negligence and ordinary care combined and says: "The term 'negligent' or 'negligence' as used in this [these] instruction[s] means the failure to use ordinary care. The phrase 'ordinary care' means that degree of care that an ordinarily careful person would use under the same or similar circumstances." MAI 11.10 says:

I

The term "negligent" or "negligence" as used in this [these] instruction[s] means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by an expert in defendant's business.

2. Because this point is dispositive, we need not address the Abbotts' and MGE's remaining points on appeal.

## II

The phrase "ordinary care" as used in this [these] instruction[s] means that degree of care, skill and learning that an ordinarily careful expert in defendant's business would used under the same or similar circumstances.

Rather than just defining "ordinary care" as "that degree of care that an ordinarily careful person would use under the same or similar circumstances" as specified in MAI 11.07, the Abbotts tendered and the circuit court gave an instruction that opted to modify the definition based upon the Supreme Court's opinion in *Stephens*.[3]

In *Stephens*, the trial court instructed the jury that the term "due care" as used in the instructions with reference to the defendant gas company meant the highest degree of care and that "the highest degree of care" meant "that care which a very careful and prudent person would use under the same or similar circumstances." *Id.* at 608. The Missouri Supreme Court found that the circuit court erred in instructing on the highest degree of care and reversed the judgment and remanded. *Id.* at 612. The *Stephens* court held that a gas company is "only required to use such degree of care as an ordinarily prudent person would exercise under like circumstances in dealing with such a dangerous commodity." *Id.* at 609. The court further noted that " '[o]rdinary care is a relative term, and its exercise requires precautions commensurate with the dangers to be reasonably anticipated under the circumstances.' " *Id.* (citation omitted).

Based upon *Stephens*, therefore, the circuit court included the phrase "in dealing with such a dangerous commodity" in In-

struction No. 6 in this case. The *Stephens* case, however, was decided in 1946, which was well before MAI 11.07 or MAI 11.10 became effective in 1978 and 1988 respectively (both of which were revised in 1996). The gravamen of the *Stephens* case is not how to instruct on ordinary care but is that the court should instruct on ordinary care to the exclusion of the highest degree of care.

■ Supreme Court Rule 70.02(b) directs that "[w]henever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." "The law is well-settled that where an MAI instruction applies to the case, the use of such instruction is mandatory." *Syn*, 200 S.W.3d at 128. Indeed, the Missouri Supreme Court has made it very clear that "mandatory directions be followed and that the pattern instructions be used as written" to make the "system work" and to "preserve its integrity and very existence[.]" *Brown v. St. Louis Pub. Serv. Co.*, 421 S.W.2d 255, 258 (Mo. banc 1967); *see also Syn*, 200 S.W.3d at 128. In so holding, the *Brown* court explained:

> If counsel are permitted to improve the approved instructions, even within the confines of specific precedents, the value of these instructions will be lost. Each such improvement by one counsel will prompt an offsetting improvement by his opponent and after a while the court will not be able to find the original with a divining rod.

*Brown*, 421 S.W.2d at 258 (citation and internal quotation marks omitted). Fur-

---

**3.** Pursuant to Rule 70.03, MGE objected to Instruction No. 6 at the instruction conference on the ground that the instruction im-

properly stated the standard of care, and MGE raised the same objection in its motion for new trial.

ther, the MAI has long warned in its Comment titled "How To Use This Book" that:

> You may have the ability to improve an instruction in MAI but you do not have the authority to do it. Do not do it. The use of a provided MAI is mandatory. If you think the change of a word or phrase will make it a better instruction, do not do it. You will be falling into error if you do.

MAI, "How To Use This Book," p. LI (7th ed.2012). "Accordingly, where there is deviation from an applicable MAI instruction which does not need modification under the facts in the particular case, prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from such deviation." *Brown*, 421 S.W.2d at 259.

■ If a submitted instruction deviates from MAI,[4] this court performs a four-step analysis:

> First, if the MAI prescribes a particular form of instruction, submission of that instruction is mandatory. If the appropriate MAI instruction is not used, prejudicial error is presumed. Second, the proponent of the instruction bears the burden of demonstrating nonprejudice. The presumed prejudice prevails unless the proponent makes it "perfectly clear" that no prejudice ensued. Third, the appellate court determines if any prejudicial effect is created. Finally, to be reversible, the error must materially affect the merits of the case.

*Syn*, 200 S.W.3d at 128–29 (citations and footnote omitted).

In this case, the definition of ordinary care given in Instruction No. 6 varied from the definition of ordinary care given in

MAI 11.07. Thus, we presume prejudice, and the Abbotts bear the burden of demonstrating nonprejudice. The Abbotts, however, merely rely on the case law of *Stephens*, 191 S.W.2d at 609; *Fields*, 374 S.W.2d at 24–25; and *Syn*, 200 S.W.3d at 132, to argue that the inclusion of the language "in dealing with such a dangerous commodity" in Instruction No. 6 was not erroneous.

In *Fields*, the circuit court gave an instruction to the jury at the request of Missouri Power and Light that said " 'the words "ordinary care" as used in these instructions with reference to defendant Missouri Power & Light Company mean such degree of care as an ordinarily prudent person would exercise under the same or similar circumstances as a supplier of natural gas.' " *Fields*, 374 S.W.2d at 24. On appeal, the plaintiff argued that the instruction was erroneous in that it minimized the duty and responsibility of Missouri Power and Light because it failed "to instruct the jury that the gas company is under a duty in the exercise of ordinary care to exercise precautions commensurate with the dangers to be reasonably anticipated under the circumstances." *Id.* at 24–25. Although the plaintiff agreed that the duty of care owed by Missouri Power and Light was "ordinary care," the plaintiff argued that the duty of ordinary care encompassed more than the instruction said it did. *Id.* at 25. In finding that the definition of ordinary care in the instruction was not erroneous, the *Fields* court cited the language from *Stephens* that said that a gas company was "only required to use such degree of care as an ordinarily prudent person would exercise under like circumstances in dealing with such a dangerous commodity." *Id.* (quoting *Ste-*

---

4. Rule 70.02(b) provides for modification of an existing MAI or drafting of a not-in-MAI instruction.

*phens,* 191 S.W.2d at 609). The *Fields* court concluded that the definition of the term "ordinary care" given in the instruction was not erroneous and "did not constitute a misdirection to the jury." *Fields,* 374 S.W.2d at 25. The court found that "[w]hat plaintiff contends should have been in the instructions is no more than another way of saying the same thing, but in a way probably more favorable to plaintiff." *Id.* The court further noted that "[n]o clarifying or amplifying instruction was requested by plaintiff and the trial court cannot be charged with error in giving the instruction it did in the absence of such a request." *Id.*

Just as was the case with *Stephens,* the *Fields* case was decided well before there was a MAI for the definition of ordinary care. As we noted previously, "[t]he law is well-settled that where an MAI instruction applies to the case, the use of such instruction is mandatory." *Syn,* 200 S.W.3d at 128. Thus, the fact that the instructions in *Stephens* and *Fields* varied from the now required MAI definition does not establish that a party does not suffer prejudice when a definition of ordinary care includes the language "in dealing with such a dangerous commodity" in the instruction.

The *Syn* case, upon which both parties rely, however, was decided after the MAI definition of ordinary care was approved by the Missouri Supreme Court. In *Syn,* the court held that a person who repairs, services, or maintains gas appliances is held to the ordinary care standard. *Syn,* 200 S.W.3d at 133. The negligence instruction given to the jury defined the term "negligent" or "negligence" as "the failure to use that degree of care that a very careful person would use under the same or similar circumstances." *Id.* at 132. In holding that a gas appliance repairman is held to the ordinary care standard, the court noted:

[P]resent Missouri case law only holds gas companies to the ordinary care standard. *Fields v. Mo. Power & Light Co.,* 374 S.W.2d 17, 26 (Mo.1963); *Stephens v. Kansas City Gas Co.,* 354 Mo. 835, 191 S.W.2d 601, 609 (1946). In *Stephens,* plaintiff won a verdict for injuries sustained in a building explosion. *Id.* at 603. On appeal, the gas company alleged that the instruction imposing a degree of highest care was instructional error. *Id.* at 608. The court agreed: "[t]he Gas Company was only required to use such degree of care as an ordinarily prudent person would exercise under like circumstances in dealing with such a dangerous commodity." *Id.* at 609.

Syn, a company that deals in propane gas, argues that someone repairing, servicing, or maintaining gas appliances should be held the highest degree of care or at least "something more" than "ordinary care." However, Syn cannot point to any Missouri case law to support such a contention. Nor can the court hold someone maintaining a gas appliance to a higher standard than that imposed on the gas company itself. Missouri law recognizes either ordinary care under the circumstances or highest degree of care under the circumstances. The "something more" than ordinary care proposed by Syn is not provided for in MAI whose use, as noted above, is mandatory rather than the "general preference" described by Syn.

*Syn,* 200 S.W.3d at 133. The Syn case does not stand for the proposition that a party does not suffer prejudice when a definition of ordinary care includes the language "in dealing with such a dangerous commodity" in the instruction. Syn merely acknowledges that a gas company is held to the ordinary care standard.

The Abbotts, therefore, have not met their burden of demonstrating nonprejudice and have not made it "'perfectly clear' that no prejudice ensued" from use of a definition of ordinary care that deviated from the MAI definition. *Id.* at 129. Thus, because the appropriate MAI definition was not used, the presumption of error remains, and it is for this court to determine if any prejudicial effect is created. *Id.*

▇ We find that the inclusion of the phrase "dangerous commodity" suggests a heightened duty on the part of MGE. The inclusion of the phrase was unnecessary and prejudicial to MGE because it connotes an "abnormally dangerous activity" which carries a higher degree of care and imposes strict liability on the actor. *See Clay v. Mo. Hwy, and Transp. Comm'n,* 951 S.W.2d 617, 623 (Mo.App.1997). Indeed, "[m]ost commonly, the duty of the highest degree of care has been imposed on the operators of motor vehicles[,] ... electric companies, those who use firearms, or those who handle explosives." *Syn,* 200 S.W.3d at 133. Gas companies, however, are held to the ordinary care standard. *Id.* And, just as was the case with *Syn* and the gas appliance repairman, the "'something more' than ordinary care ... is not provided for in MAI," and the MAI is "mandatory" and not a "general preference." *Id.* As the *Syn* court acknowledged,

> Where a jury instruction imposes upon a party a standard of care higher than that required by law, prejudice is presumed. *Root v. Mudd,* 981 S.W.2d 651, 656 (Mo.App.1998). The presumption is rarely rebutted. *Lopez v. Three Rivers Elec. Coop., Inc.,* 26 S.W.3d 151, 158 (Mo. banc 2000). The Missouri Supreme Court has consistently held that imposing upon a party a standard of care higher than the law requires is prejudi-

cial, mandating a new trial. *Id.* (citing *Schlegel v. Knoll,* 427 S.W.2d 480, 485 (Mo.1968); *Toburen v. Carter,* 273 S.W.2d 161, 165 (Mo.1954); *Oesterreicher v. Grupp,* 119 S.W.2d 307, 308 (Mo. 1938); *Borgstede v. Waldbauer,* 337 Mo. 1205, 88 S.W.2d 373, 376 (1935)).

*Syn,* 200 S.W.3d at 134.

In that MGE properly preserved this error in its objection to the instruction at trial and in its motion for new trial, *see id.* at 134–35, we find that the circuit court erred in giving Instruction No. 6 as it deviated from the MAI and included language that suggested something more than ordinary care. The instruction as given was prejudicial, and MGE is entitled to a new trial.

In so ruling, we caution counsel to resist the temptation to inject evidentiary or argumentative detail into the otherwise bland statements of law contained in instructions in hopes of gaining some advantage. Further, the circuit court should be alert to such attempts lest the institutional value of pattern instructions be lost. Identifying instructions "is a very real and vital duty in the administration of justice and no trial judge can abdicate judicial responsibilities to the discretion of the trial lawyers who prepare the instructions. No judge should fail in this duty upon the premise that if the lawyers want to create error they are free to do so." MAI, "How To Use This Book," p. LIV.

We, therefore, reverse the circuit court's judgment and remand for a new trial.

All concur.