Mark D. Pfeiffer, Presiding Judge
Chad Franklin, Chad Franklin National Auto Sales North, LLC ("CFNAS"), and CFS Enterprises, Inc. ("CFS Enterprises") (hereinafter jointly referred to as "the Franklin parties" or "defendants" or "appellants") appeal from the judgment of the Circuit Court of Clay County, Missouri ("trial court"), granting the motion for new trial of Glenna J. Overbey, individually and in her capacity as personal representative of the Estate of Max E. Overbey ("Overbey").[1] We affirm the trial court's ruling granting a new trial.
Factual and Procedural Background[2]
In September of 2007, Overbey purchased a car from CFNAS during a promotional sales event. In connection with this promotion, many customers of CFNAS ultimately filed claims against the Franklin parties. In 2008, Overbey filed suit against Chad Franklin and CFNAS regarding misrepresentations by Chad Franklin leading to Overbey's automobile purchase during the promotional sales event. Following a jury trial, Overbey prevailed in the lawsuit, receiving a verdict of $4,500 in actual damages and $1 million in punitive damages.[3]
In October of 2008 and December of 2009, the Franklin parties separately filed a bad faith lawsuit against their liability insurance carrier, Universal Underwriters Insurance Company ("Universal Underwriters"), alleging wrongful denial of coverage for the claims of their customers relating to the promotional sales event. Prior to a confidential settlement[4] of the *567 bad faith lawsuit, Chad Franklin's wife-Tiffany Franklin-was added as a party to the lawsuit; and, even though Tiffany Franklin was not involved in her husband's automobile business, it was she, and not her husband, who received a sizeable share of the settlement proceeds. Not so coincidentally, Tiffany Franklin's receipt of confidential settlement proceeds occurred nineteen days after Overbey obtained judgment against Tiffany Franklin's husband and her husband's automobile business (i.e. , but not a judgment against her) in Overbey's original lawsuit relating to misrepresentations during the promotional car sales event. It is this settlement payment to Tiffany Franklin that, in large part, formed the basis for the present lawsuit.
In April of 2011, Overbey filed the instant lawsuit. In pertinent part, Overbey asserted that the settlement payment to Tiffany Franklin constituted a fraudulent transfer in violation of Missouri's Uniform Fraudulent Transfer Act ("MUFTA").[5]
After discovery abuses by the defendants, the trial court sanctioned the defendants by striking their pleadings and entering an interlocutory judgment against the defendants as to liability.[6] Thus, the trial court directed the following default admissions to be true for purposes of liability: that Tiffany Franklin was the spouse of Chad Franklin; that she was not involved in any capacity with the operation of her husband's automobile business; that she was added as a party to the bad faith lawsuit against the liability carrier for the Franklin parties so that she, instead of her husband, could receive a confidential settlement payment; that this payment constituted all or substantially all of Mr. and Mrs. Franklin's assets, and the Franklin parties were otherwise insolvent at the time of the settlement; that this transfer was fraudulent and was specifically designed to thwart Overbey's collection of the judgment Overbey had obtained against Tiffany Franklin's husband and automobile business nineteen days prior to her receipt of the fraudulent settlement transfer.
Prior to trial, the trial court issued an order in limine reminding the defendants of its interlocutory ruling as to liability, that the defendants would not be permitted to attempt to introduce evidence relating to liability, and that the defendants would only be permitted to "defend as to existence, nature, or amount of Plaintiffs['] damages, i.e. respond to Plaintiffs' damages evidence."
Undeterred, the defendants contravened the trial court's interlocutory entry of judgment and its in limine order, and repeatedly injected issues of liability into the trial.
For example, during opening statement, defense counsel stated that Tiffany Franklin had suffered damages, had a right to be a party to the bad faith lawsuit, and possessed a valid "lien" and entitlement to the *568 settlement proceeds that she received from Universal Underwriters. These statements were objected to, the objections were sustained, defense counsel was admonished to refrain from discussing liability facts, and defense counsel responded by stating that he would "put it in context of the damages" issue remaining in the case. Defense counsel then continued in his opening statement to discuss the merits of Tiffany Franklin's bad faith claim and that her receipt of the settlement payment "did not cause damage to [Overbey]." Again, the statements were objected to, sustained, and defense counsel received repeated admonitions from the trial court. The die was cast, however, for the theme of defendants' argument on damages: that there can be no damages where there is no liability-which directly contradicted the trial court's numerous rulings on the issue of liability.
During trial, there were numerous attempts by defense counsel to present evidence establishing that Tiffany Franklin had a right to become a party to her husband's bad faith lawsuit against the liability carrier for the Franklin parties and, likewise, that she had a right to assert her own personal bad faith claim that would entitle her to a legitimate payment of settlement proceeds from the bad faith lawsuit. On each occasion, the trial court sustained objections to such evidence since it related to liability and not damages.
Eventually, defense counsel argued in response to another admonition from the trial court: "But when [the settlement] payments went to Tiffany, it's not going to make any sense to the jury why payments were made to Tiffany." Yet again, the trial court reminded defense counsel that, "there's been an interlocutory judgment on the merits that payment to Tiffany was a fraudulent transfer . Question is, how much did Tiffany receive and how much did other people receive." (Emphasis added.)
Even after this admonition, defense counsel persisted in attempting to inject evidence in the case that there was nothing fraudulent about the transfer of settlement proceeds to Tiffany Franklin. Each time this evidence was offered, it was objected to, and the objections were sustained.
Then, in closing argument, defense counsel ignored the evidence that was actually introduced at trial and argued that all of the settlement payments made in the bad faith claim were subject to final claims and judgment liens, were not fraudulent, and Overbey had not suffered any damages arising from these settlement payments. In addition, defense counsel misstated the law as it relates to MUFTA and argued that Overbey had no right to assert a claim for damages relating to the settlement payments that were made when Overbey's judgment was only a nineteen-day-old judgment that had not yet become final.[7]
Additionally, the trial court erroneously instructed the jury on the law. Even though the interlocutory judgment as to liability foreclosed submitting liability issues to the jury, and instead, the only issue for the jury to decide was damages, *569 the trial court failed to give the correct jury instruction proffered by Overbey. The relevant jury instruction provided to the jury at trial (repeated for each legal claim against the defendants) read as follows:
Under the law, Defendants Chad Franklin, Chad Franklin National Auto Sales North, LLC, and CFS Enterprises, Inc. are liable to Plaintiffs Overbey for damagesin this case on Plaintiffs' claim against Defendants Chad Franklin, Chad Franklin National Auto Sales North, LLC, and CFS Enterprises, Inc. for fraudulent conveyance. Therefore, you must find the issues in favor of Plaintiffs and award Plaintiffs such sum as you believe will fairly and justly compensate Plaintiffs for any damages you believe they sustained.
The language "for damages" was covered with white-out in the original jury instructions provided to the jurors and struck through in the trial judge's complete set of instructions.
This instruction was based on MAI 31.07, which read:
31.07 [1987 Revision] Amount of Damages Only Issue
Under the law, defendant is liable to plaintiff for damages in this case. Therefore, you must find the issues in favor of plaintiff and award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence.
(Footnotes omitted.) However, as was pointed out by Overbey in the instruction conference with the trial court, in 2016, MAI 31.07 was withdrawn and replaced with MAI 31.07(A), reading:
31.07(A) [2016 New] Admission of Liability-Amount of Damages Only Issue
(Approved July 13, 2015; Effective January 1, 2016)
As a result of defendant's admission of liability, the only issue for you to decide is the amount of damages. Therefore, in your verdict you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained [and is reasonably certain to sustain in the future] that defendant's conduct directly caused or directly contributed to cause.
(Footnote omitted.)
Rule 70.02(b)[8] directs:
Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject. Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.
Here, the applicable MAI was 31.07(A), it was proffered by Overbey at the instruction conference, and, as the trial court would later explain in its motion for new trial ruling, it was erroneously rejected by the trial court.
Following closing arguments, the jury returned verdicts on all relevant counts for $0 in compensatory damages. Overbey filed a motion for new trial. The trial court granted Overbey's motion for new trial in *570 a judgment setting forth in meticulous detail its rationale and, in conclusion, stating:
When the failure to follow the required language of MAI 31.07 is considered in conjunction with the other allegations of error during closing argument, the Court finds that the cumulative effect was [sic] resulted in undue prejudice to the Plaintiff and a manifest injustice by affecting the outcome of the case.
There were multiple attempts by Defendants to put information into evidence probative of "liability." Defendants offered evidence regarding the finality of Plaintiffs' underlying judgment. Plaintiffs objected to Defendants['] attempts to offer evidence related to non-liability before the jury. In closing argument, Defendants made statements regarding the lack of finality of Plaintiffs['] underlying judgment inferring [sic] to the jury that Plaintiffs lacked a final judgment or a right to recovery [sic] money against Defendants. This was a misstatement of law and related to the issue [of] liability. This argument likely affected the Jury because it directly contradicts the default admissions of liability and took advantage of jury instructions which contained [sic] lacked the clarity of required MAI language that liability was admitted and that the only issue to decide was [the] amount of damages. This affected the outcome as to all the money transfers at issue, i.e. the bank, the attorneys, and Tiffany Franklin. Likewise, the closing arguments about Tiffany Franklin's damages, entitlement to money, and lack of finality of Plaintiffs' underlying judgment all were directed toward issues of liability, not the existence of a lien or encumbrance for Mrs. Franklin. The erroneous jury instructions allowed this argument on the issue [of] liability to be raised and ruled upon even though liability was admitted. These arguments and inferences accumulated with the faulty language in Instruction Nos. 7, 10, and 13 to send a mixed directive to the jury that liability was for them to decide. Accordingly, there was undue prejudice as to Plaintiff and a miscarriage of justice.
This timely appeal of the trial court's new trial ruling is now before us.
Standard of Review
The trial court is vested with broad discretion to grant a new trial, and our review gives substantial deference to such ruling. Wagner v. Mortg. Info. Servs., Inc. , 261 S.W.3d 625, 636 (Mo. App. W.D. 2008) ; Rule 78.01; see also Rule 78.08. In reviewing a trial court's decision to sustain a motion for new trial, this Court applies "a rule of greater liberality ... than in denying it." Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n , 192 S.W.3d 461, 469 (Mo. App. W.D. 2006) (internal quotation marks omitted). Owing to this standard of greater liberality, our review of the trial court's ruling granting a new trial is "to indulge every reasonable inference in favor of the trial court and may not reverse unless there has been a clear abuse of discretion." Id. (internal quotation marks omitted).
An abuse of this broad discretion will be found only "when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]" Id. (internal quotation marks omitted). "We do not reweigh the evidence when a party appeals the motion court's grant of a motion for new trial; we focus only on whether the court's decision constitutes an abuse of discretion." Larsen v. Union Pac. R.R. Co. , 503 S.W.3d 213, 223-24 (Mo. App. W.D. 2016).
*571 "On a motion for new trial, a trial court may reconsider its rulings on discretionary matters and may order a new trial if it believes its discretion was not wisely exercised and that the losing party was thereby prejudiced." Cooper v. Ketcherside , 907 S.W.2d 259, 260 (Mo. App. W.D. 1995) (internal quotation marks omitted). Rulings regarding closing arguments are matters within the discretion of the trial court. Brizendine v. Bartlett Grain Co., LP , 477 S.W.3d 710, 714 (Mo. App. W.D. 2015). "Therefore, on review, we are limited to determining whether the trial court abused its discretion in finding prejudice." Cooper , 907 S.W.2d at 260. "Where a new trial has been granted due to instructional error, the appellant must show either that the instruction given was not erroneous, or that the instruction created no substantial potential for prejudicial effect." MFA Oil Co. v. Robertson-Williams Transp., Inc. , 18 S.W.3d 437, 439 (Mo. App. W.D. 2000) (internal quotation marks omitted).
Analysis
On appeal, appellants claim there was no instructional error or closing argument error sufficient to justify the trial court's granting of a new trial. But, the flawed premise of all of their arguments rests upon the faulty notion that the settlement transfer to Tiffany Franklin was not fraudulent and, thus, there is "no damage" to Overbey. This rationale is flawed for the simple reason stated below and repeated by the trial court on numerous occasions during trial:
[T]here's been an interlocutory judgment on the merits that payment to Tiffany [Franklin] was a fraudulent transfer.
It is clear from appellants' briefing that their real complaint is that they feel unfairly treated by the trial court's striking of their pleadings and issuance of an interlocutory judgment as to liability, this Court's refusal to grant writ relief as to the trial court's discovery sanction ruling, and finally, the Supreme Court's refusal to grant similar writ relief. But that issue is not before us; and, as the trial court aptly pointed out, after the trial court's interlocutory entry of judgment as to liability, this trial was not the place to argue about whether or not Tiffany Franklin had a right to pursue a bad faith claim against Universal Underwriters and whether or not she had a valid claim to settlement proceeds from that bad faith lawsuit. Instead, by operation of the discovery sanction ruling and corresponding interlocutory entry of judgment of liability in this case, the payment made to Tiffany Franklin from the bad faith lawsuit settlement was a fraudulent transfer made for the purpose of defrauding Overbey in order to prevent the collection of Overbey's claim against the Franklin parties. The only remaining question to be decided by the jury was the amount Tiffany Franklin acquired in the fraudulent transfer, not whether any portion of her receipt of these proceeds was not fraudulent.
This is why the trial court properly concluded that there was instructional error. Since the only claim that Overbey suffered "no damages" arises from the argument that there was "no liability" relating to the settlement transfer to Tiffany Franklin-which the trial court had already concluded was, in fact, a fraudulent transfer-defendants' claim of "no damage" was disingenuous. Since appellants have never denied that Tiffany Franklin received settlement proceeds from the bad faith lawsuit settlement, Overbey has suffered damages in some amount that the jury must award consistent with the description of the law of the case patterned after MAI 31.07(A) [2016 New]:
As a result of defendant's admission of liability, the only issue for you to decide *572 is the amount of damages. Therefore, in your verdict you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained [and is reasonably certain to sustain in the future][9] that defendant's conduct directly caused or directly contributed to cause.
Though the Notes on Use indicate that this instruction is not applicable where defendants claim there is no damage, as we have explained above and the trial court explained below, defendants' claim of "no damage" was disingenuous because such argument was, in actuality, a claim of "no liability," and that issue had already been removed from jury consideration by the trial court's interlocutory entry of judgment as to liability. Hence, where, as here, Overbey argued at the instruction conference that the trial court was mandated to use MAI 31.07(A) instead of modifying the former MAI 31.07, Overbey preserved the objection to the instruction that was given by the trial court, and the trial court committed error in refusing to use MAI 31.07(A) in its instruction to the jury.
If there is an applicable MAI, its use is mandatory. Abbott v. Mo. Gas Energy , 375 S.W.3d 104, 108 (Mo. App. W.D. 2012). The pattern instructions are to be used as written in order to preserve the integrity and existence of the system. Id. Any improvements permitted devalue the instructions and prompt responsive improvements from opponents, which, in time, have the potential to completely obscure the original. Id. ; Brown v. St. Louis Pub. Serv. Co. , 421 S.W.2d 255, 258 (Mo. banc 1967). The MAI instructs explicitly that
You may have the ability to improve an instruction in MAI but you do not have the authority to do it. Do not do it. The use of a provided MAI is mandatory. If you think the change of a word or phrase will make it a better instruction, do not do it. You are falling into error if you do.
MAI, "How to Use This Book," p. LI (7th ed. 2012).
" 'Accordingly, where there is deviation from an applicable MAI instruction which does not need modification under the facts in the particular case, prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from such deviation.' " Abbott , 375 S.W.3d at 109 (quoting Brown , 421 S.W.2d at 259 ).
Here, the trial court aptly noted in its new trial ruling that it erred in deviating from the precise wording of MAI 31.07(A) and "[t]he erroneous jury instructions allowed this argument on the issue [of] liability to be raised and ruled upon [by the jury] even though liability was admitted.... [T]he faulty language in [the damages] Instruction ... sen[t] a mixed directive to the jury that liability was for them to decide." Thus, the trial court has not rested on the notion of presumed prejudice; rather, the trial court has identified the actual prejudice in this case that MAI 31.07(A) was designed to prevent: namely, a jury's foray into issues of liability where those issues are not before the jury. Thus, though it is the appellants' burden on appeal to show "the instruction created no substantial potential for prejudicial effect," MFA Oil , 18 S.W.3d at 439 (internal quotation marks omitted), and appellants have failed to do so, we also agree with the trial court's analysis that, in fact, the erroneous jury instruction did create prejudicial effect in the trial below.
*573 On this basis alone and after, as we are required to do, "indulg[ing] every reasonable inference in favor of the trial court['s granting of a new trial,]" we simply cannot reverse where, as here, "there has been [no showing of] a clear abuse of discretion" by the trial court in its ruling granting the motion for new trial. Damon Pursell , 192 S.W.3d at 469.[10]
Conclusion
The trial court's ruling granting a new trial was not an abuse of discretion; hence, we affirm the trial court's ruling and remand for a new trial.
Lisa White Hardwick and Edward R. Ardini, Jr., Judges, concur.

In September of 2010, Max Overbey died, and his estate was substituted as a party in the lawsuit resulting in the judgment underlying the instant suit. All references to "Max Overbey," "Glenna J. Overbey," or "Estate of Max Overbey" are hereinafter referred to in this opinion as "Overbey."

"In reviewing a circuit court's ruling resulting in either the grant or denial of a new trial, appellate courts view the evidence in the light most favorable to the circuit court's order." March v. Midwest St. Louis, L.L.C. , 417 S.W.3d 248, 253 (Mo. banc 2014) (citing Badahman v. Catering St. Louis , 395 S.W.3d 29, 39 (Mo. banc 2013) ).

The judgment was later modified by the court to reduce the punitive damages award to $500,000.00, and to include an award of attorney fees.

The confidential settlement agreement in the amount of $900,000.00 provided that $250,000.00 was to go to Fifth Third Bank, a secured creditor of the Franklin parties; $383,629.59 to Monsees, Miller, Mayer, Presley & Amick, the Franklin parties' attorneys; and $266,370.41 to Chad Franklin's wife, Tiffany.

All statutory references herein are to the Revised Statutes of Missouri 2000 as updated through the 2009 Cumulative Supplement.

Following the Franklin parties' unsuccessful Motion to Reconsider and/or Vacate Order Striking Pleadings, a notice to take Franklin's depositions, which was quashed, and an unsuccessful Amended Motion to Reconsider and/or Vacate Order Striking Pleadings, writs were filed in and denied by this Court and the Supreme Court in April and May of 2016. State ex rel. Franklin v. Harman , WD79576, State ex rel. Franklin v. Harman , SC95697, and State ex rel. Chad Franklin National Auto Sales North, LLC v. Harman , SC95698.

Section 428.024.1(1) of MUFTA states in relevant part that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" A "creditor" is defined in MUFTA as "a person who has a claim." § 428.009(4). A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 428.009(3).

All rule references are to I Missouri Court Rules-State (2018).

On retrial, consistent with the Notes on Use for MAI 31.07(A), the trial court will need to decide whether this bracketed phrase is to be included in the instruction to the jury.

Though our review of the trial court's ruling granting a new trial on the basis of instructional error is affirmed on that basis alone, we note ex gratia that appellants' other claims of error relating to the misstatements of law in closing argument that the trial court noted in its ruling are also without merit. " '[M]isstatements of the law are impermissible during closing argument, and a positive and absolute duty ... rests upon the trial judge to restrain such arguments.' " Peters v. ContiGroup , 292 S.W.3d 380, 390-91 (Mo. App. W.D. 2009) (quoting Heshion Motors, Inc. v. W. Int'l Hotels , 600 S.W.2d 526, 534 (Mo. App. W.D. 1980) ). Counsel is not permitted to "go beyond the evidence and the issues drawn by the instructions, or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify[.]" Brizendine v. Bartlett Grain Co., LP , 477 S.W.3d 710, 718 (Mo. App. W.D. 2015) (internal quotation marks omitted). Here, the defendants mischaracterized Overbey's "claim" in closing argument, and the only purpose for doing so was to, once again, inject issues of liability into a case in which such issues had been withdrawn from the jury's consideration. Further, with regard to the appellants' argument that Overbey did not object to certain challenged statements in the defendants' closing argument, "[a] trial court has discretionary power to grant a new trial because of an erroneous trial ruling, whether or not an objection was timely made," Hill v. Hyde , 14 S.W.3d 294, 297 (Mo. App. W.D. 2000), and perhaps more importantly, the trial court ultimately has the discretion to grant a new trial to avoid a manifest injustice or miscarriage of justice under the "plain error" rule. Rule 78.08; Larsen v. Union Pac. R.R. Co. , 503 S.W.3d 213, 222-23 (Mo. App. W.D. 2016). Here, as the trial court noted with great detail in its new trial ruling, defense counsel's attempt to inject liability evidence and argument into the case was not isolated; rather, it was repeated. At every juncture in the presentation of evidence, Overbey objected to the evidence and the trial court sustained the objections. But because defense counsel refused to quit commenting upon objectionable topics and did so repeatedly, the trial court was within its discretion to consider these objectionable comments along with the trial court's own candid discussion of its contributing instructional error in its new trial ruling.