IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
DIMPLE “DENISE” KELLY, )
 )
 Appellant, )
 )
v. ) WD83742
 )
CITY OF LEE’S SUMMIT, ) Opinion filed: March 30, 2021
MISSOURI, )
 )
 Respondent. )

APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE JAMES F. KANATZAR, JUDGE

 Division Two: W. Douglas Thomson, Presiding Judge,
 Alok Ahuja, Judge and Edward R. Ardini, Jr., Judge

 Dimple “Denise” Kelly appeals from the trial court’s judgment in favor of the

City of Lee’s Summit, Missouri, on her claim of wrongful termination under the

Missouri Human Rights Act. In her sole point on appeal, Kelly contends that the trial

court erred in overruling her objection to the City’s lawful justification instruction

because it impermissibly modified MAI 38.02. We reverse and remand.
 Factual and Procedural History

 On July 24, 2014, Dimple Denise Kelly (“Kelly”) was hired by the City of Lee’s

Summit, Missouri, (the “City”) as its director of human resources. Kelly is a Black

woman with several years of experience in human resources. (Legal File, page 32).

At the time of her hiring, she was 58 years old. Upon beginning her employment with

the City, Kelly executed a Management Agreement. Under the terms of the

Management Agreement, Kelly could be terminated by the City “without cause, while

Ms. Kelly is willing and able to perform [her] duties . . . .”

 On March 24, 2017, the City terminated Kelly’s employment without cause. At

the time Kelly was discharged, she was 61 years old. Pursuant to Kelly’s timely

request under Section 290.140,1 the City issued its letter of dismissal notifying Kelly

that although terminated without cause, “the reason for [her] termination was overall

unacceptable performance.” The letter then described in detail the purported

deficiencies in Kelly’s work performance, under four headings: “[f]ailure to

understand policies, procedures, ordinances, laws and processes”; “[i]naccurate and

late work product”; “[f]requent shifting of responsibility for assigned work”; and

“[i]neffective leadership.”

 On May 25, 2018, Kelly filed a petition against the City alleging racial, age,

and sex/gender discrimination in violation of the Missouri Human Rights Act

 1All references to Sections are to the Revised Statutes of Missouri 2013, unless otherwise

indicated.

 2
(“MHRA”), pursuant to Section 213.055 et seq.2 On February 24, 2020, a jury trial

commenced. At trial, Kelly acknowledged that, under the terms of the Management

Agreement, the City retained the right to terminate her employment without cause,

or without providing her a reason for such termination. Likewise, Kelly

acknowledged that, under the Management Agreement, the City was not required to

provide her notice prior to terminating her employment. Nevertheless, the bulk of

the City’s evidence introduced at trial consisted primarily of Kelly’s poor work

performance. At the close of all evidence, the City submitted Missouri Approved Jury

Instruction (Civil) (7th ed.)3 (“MAI”) 38.02 as its lawful justification converse

instruction (“Instruction 9”). As proposed by the City, Instruction 9 modified MAI

38.02 by omitting the word “because” and stating that Kelly was terminated “under

the Management Agreement ‘without cause.’” Kelly objected to Instruction 9, arguing

that “it does not hypothesize a reason,” insisting that “the lawful justification

instruction requires that [the City] state the reason for the termination.” The trial

court overruled such objection and submitted Instruction 9 to the jury in due course.

 The parties thereafter proceeded to closing arguments. During closing

argument, City’s counsel made several statements that any evidence concerning

Kelly’s job performance is not to be a factor in the jury’s determinations, and instead

that the sole “issues in this case are race, age, and sex/gender.”

 2Section 213.055.1 states, in pertinent part: “It shall be an unlawful employment practice: (1)

[f]or an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of
any individual: (a) . . . to discharge any individual . . . .”
 3MAI 8th edition, though published in 2020, was approved for use effective January 1, 2021,

and thus is not applicable to the trial of this case.

 3
 Following deliberations, the jury returned its verdict for the City. On March

3, 2020, the trial court entered its judgment. On April 2, 2020, Kelly filed a motion

for new trial, which the trial court denied on April 13, 2020. Kelly now appeals from

the trial court’s judgment.

 Standard of Review

 “Whether the trial court properly instructed the jury is a question of law that

we review de novo.” Massood v. Fedynich, 530 S.W.3d 49, 61 (Mo. App. W.D. 2017)

(citing Hervey v. Mo. Dep’t of Corrections, 379 S.W.3d 156, 159 (Mo. banc 2012)).

 To reverse on grounds of instructional error, the party challenging the
 instruction must show that the instruction misled, misdirected, or
 confused the jury. Further, “[t]he party offering the erroneous
 instruction has the burden of showing that the erroneous instruction
 ‘created no substantial potential for prejudicial effect.’” It is within the
 province of this court to determine the prejudicial effect of the erroneous
 instruction.

Abbott v. Missouri Gas Energy, 375 S.W.3d 104, 107 (Mo. App. W.D. 2012) (internal

citations omitted).

 Analysis

 In her sole point on appeal, Kelly argues that the trial court erred in overruling

her objection to Instruction 9 because it impermissibly modified MAI 38.02 and

thereby prejudiced her. Kelly claims that Instruction 9 was impermissibly modified

because (1) the City’s instruction failed to hypothesize the asserted lawful

justification for the termination of her employment and (2) the City failed to include

the pattern instruction’s mandatory causation language in removing the word

“because.”

 4
 “Generally, at-will employees may be terminated for any reason or for no

reason.” Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 91 (Mo. banc 2010)

(quoting Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 663 (Mo. banc 1988)).

“As a matter of law, the discharged at-will employee has no cause of action for

wrongful discharge.” Id. However, “the MHRA modifies the at-will employment

doctrine by instructing employers that they can terminate employees, but their

reason for termination cannot be improper.” Fleshner v. Pepose Vision Inst., P.C., 304

S.W.3d at 94 (citing Section 213.055.1). “Under the MHRA, if race, color, religion,

national origin, sex, ancestry, age, or disability of the employee was a ‘contributing

factor’4 to the discharge, then the employer has violated the MHRA.” Fleshner v.

Pepose Vision Inst., P.C., 304 S.W.3d at 94. If, as claimed by Kelly, race, age or sex

is a contributing factor to an employee’s termination, then the termination is for an

improper reason. Conversely, an employer may provide evidence that termination

occurred for a proper, or lawful, reason – a lawful justification.

 To that end, if supported by the law and the evidence, a defendant (employer)

may request a “lawful justification” instruction. MAI 38.02, Notes on Use5 (2017

 4“Contributing factor” was the standard applicable to Kelly’s claim. However, the standard
has since been changed to “motivating factor,” pursuant to S.B. 43 which became effective August 28,
2017, after Kelly’s discharge.
 5“‘From the strict adherence to M.A.I. so often and forcefully reiterated by the Supreme Court,

has developed the equally forcible admonition that the “Notes on Use” thereof be religiously followed.’”
Clark v. Mo. & N. Ark. R.R., 157 S.W.3d 665, 671 (Mo. App. W.D. 2004) (quoting Royal Indem. Co. v.
Schneider, 485 S.W.2d 452, 458 (Mo. App. W.D. 1972)). “And, since ‘MAI instructions, promulgated
and approved by the Supreme Court, are authoritative if applicable to the factual situation . . . this
court, as was the trial court, is bound by them as surely as it is bound by Supreme Court cases and
rules.’” Clark, 157 S.W.3d at 671 (quoting Lindsay v. McMilian, 649 S.W.2d 491, 493-94 (Mo. App.
W.D. 1983)).

 5
Revision). MAI 38.02 instruction, titled “Missouri Human Rights Act – Lawful

Justification,” is this “lawful justification” instruction, and reads as follows:

 Your verdict must be for defendant if you believe:

 First, defendant (here insert alleged discriminatory act submitted in
 plaintiff’s verdict directing instruction such as . . . “discharged” . . . .)
 plaintiff because (here set forth the alleged lawful reason such action
 was taken), and

 Second, in so doing (here insert the protected classification submitted
 by plaintiff, such as race, color, religion, national origin, etc.) was not a
 contributing factor.

MAI 38.02 (underline added). Because it is a converse instruction6, use of MAI 38.02

is completely at the option of defendant. See MAI 38.02, Notes on Use (2017

Revision). “Lawful justification” may be argued without submission of such an

instruction should defendant so desire. Id. However, if defendant elects to submit

MAI 38.02, “it must be in the form of the MAI 38.02.” MAI 38.02.

 In the case at hand, the City’s proposed Instruction 9 read:

 Your verdict must be for defendant if you believe:

 First, Defendant terminated Plaintiff under the Management
 Agreement “without cause,” and

 6
 We recognize that, in Gaal v. BJC Health System, 597 S.W.3d 277 (Mo. App. E.D. 2019), the
Eastern District of this Court recently appeared to characterize MAI 38.02 as an affirmative defense
instruction, rather than as an affirmative converse. Id. at 290. The lawful justification “defense” does
not appear to fall within the definition of an “affirmative defense,” however, since an “affirmative
defense” is generally understood to be “[a] defendant's assertion of facts and arguments that, if true,
will defeat the plaintiff's ... claim, even if all the allegations in the complaint are true.” Allen v.
Titan Propane, LLC, 484 S.W.3d 902, 905 (Mo. App. S.D. 2016) (citations and internal quotation marks
omitted). MAI 38.02 seeks to directly contradict one of the essential elements of a plaintiff’s cause of
action: that a protected characteristic was a contributing factor in an adverse employment action.
Thus, it does not appear to be a classic “affirmative defense.” If Instruction 9 is properly characterized
as an affirmative converse, it appears that the City would not have been entitled to its submission,
because the City had separately requested a “true converse” instruction, which was submitted as
Instruction 8. Generally, “a defendant is entitled to only one converse instruction for each of plaintiff’s
verdict directing instructions.” Gaal, 597 S.W.3d at 289.

 6
 Second, in doing so, neither race, age nor sex/gender was a contributing
 factor.

City’s proposed Instruction 9 modified MAI 38.02 by deleting the word “because.” As

the ‘alleged lawful reason,’ City proposed “under the Management Agreement

‘without cause.’” Over objection, the trial court approved proposed Instruction 9.

 We are guided by Supreme Court Rule 70.02(b)7 which directs that “[w]henever

Missouri Approved Instructions contains an instruction applicable in a particular

case that the appropriate party requests or the court decides to submit, such

instruction shall be given to the exclusion of any other instructions on the same

subject.” “The law is well-settled that where an MAI instruction applies to the case,

the use of such instruction is mandatory.” Syn, Inc. v. Beebe, 200 S.W.3d 122, 128

(Mo. App. W.D. 2006) (citing Clark v. Mo. & N. Ark. R.R., 157 S.W.3d 665, 671 (Mo.

App. W.D. 2004)). In fact, in its Comment titled “How To Use This Book” MAI warns

that:

 You may have the ability to improve an instruction in MAI but you do
 not have the authority to do it. Do not do it. The use of a provided MAI
 is mandatory. If you think the change of a word or phrase will make it
 a better instruction, do not do it. You will be falling into error if you do.

MAI, “How To Use This Book” (7th ed.).

 Indeed, long ago our Supreme Court made clear the need that “mandatory

directions be followed and that the pattern instructions be used as written” to make

the “system work” and to “preserve its integrity and very existence[.]” Brown v. St.

 7All references to Rules are to the Missouri Rules of Civil Procedure (2018), unless otherwise

noted.

 7
Louis Pub. Serv. Co., 421 S.W.2d 255, 258 (Mo. banc 1967)); see also Syn, 200 S.W.3d

at 128. In so holding, the Brown court explained:

 If counsel are permitted to improve the approved instructions, even
 within the confines of specific precedents, the value of these instructions
 will be lost. Each such improvement by one counsel will prompt an
 offsetting improvement by his opponent and after a while the court will
 not be able to find the original with a divining rod.

Brown v. St. Louis Pub. Serv. Co., 421 S.W.2d at 258 (internal quotation marks

omitted).

 When addressing a submitted instruction which deviates from MAI, we

perform a four-step analysis:

 First, if the MAI prescribes a particular form of instruction, submission
 of that instruction is mandatory. If the appropriate MAI instruction is
 not used, prejudicial error is presumed. Second, the proponent of the
 instruction bears the burden of demonstrating nonprejudice. The
 presumed prejudice prevails unless the proponent makes it “perfectly
 clear” that no prejudice ensued. Third, the appellate court determines
 if any prejudicial effect is created. Finally, to be reversible, the error
 must materially affect the merits of the case.

Abbott, 375 S.W.3d at 109 (quoting Syn, 200 S.W.3d at 128-29) (citations and footnote

omitted).

 Addressing the first step of this analysis, we review the submitted MAI

converse instruction, 38.02. Initially, we note this instruction need not be given at

all. However, if defendant elects to submit it, “it must be in the form of this MAI

38.02”. MAI 38.02, Notes on Use (2017 Revision). Here, the City elected to submit

the converse instruction. However, not heeding the Notes on Use, the City modified

MAI 38.02 by deleting the word “because.” As the ‘alleged lawful reason,’ the City

proposed “under the Management Agreement ‘without cause.’”

 8
 Besides its deletion of the word “because,” the City’s proffered lawful

justification instruction erroneously departed from MAI 38.02 in a second significant

respect. In paragraph “First,” MAI 38.02 instructs the court to “set forth the alleged

lawful reason” an adverse employment action was taken. The City inserted the

statement that it had terminated Kelly “under the Management Agreement ‘without

cause.’” But the statement that it had terminated Kelly “without cause” is not a

statement of a reason for Kelly’s termination – it is only a statement that the City did

not act for particular reasons. The management agreement defines “cause” as:

certain criminal convictions or misconduct; “serious breach” of the Agreement or City

regulations; or “[n]eglect of duties or general neglect of the business of the City.”

Thus, “cause” is defined as circumstances rooted in the employee’s conduct or work

performance. By stating in Instruction 9 that it had terminated Kelly without

“cause,” the City was simply identifying reasons which did not explain its termination

of Kelly. In its brief and during argument, the City emphasizes that it was entitled

to terminate Kelly for “no reason.” But a statement that it had terminated Kelly for

“no reason,” or that it had terminated Kelly in the absence of circumstances

constituting “cause,” is not a statement of a reason for Kelly’s termination.

Statements that the City did not act for certain reasons, or that it acted for “no

reason,” are not themselves statements of a “lawful reason” for Kelly’s termination.

 Due to these unauthorized modifications to MAI 38.02, we must presume

prejudicial error. Accordingly, the City, as the proponent of modified 38.02, must

 9
demonstrate nonprejudice by making it “perfectly clear that no prejudice ensued.”

This they cannot do.

 The City relies on Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d at 91,

merely for the principle that “at-will employees8 may be terminated for any reason or

for no reason,” and therefore no lawful reason was required. While this statement

succinctly describes the at-will employment doctrine, it does nothing to address the

exception to that doctrine created by the MHRA. “[T]he MHRA modifies the at-will

employment doctrine by instructing employers that they can terminate employees,

but their reason for termination cannot be improper.” Fleshner, 304 S.W.3d at 94

(citing Section 213.055.1). In other words, termination must be for a lawful reason.

It is this lawful reason that MAI 38.02 seeks in paragraph First when stating, “here

set forth the alleged lawful reason such action was taken.”

 Therefore, the City’s mere reliance on the at-will employment doctrine is

misplaced. The City’s argument is essentially that their submitted instruction, which

only addressed the general at-will employment doctrine, suffices in a case where an

exception to the general doctrine was at issue. The City’s submitted instruction did

not allow the jury to get to the question of whether there was an underlying lawful

reason, not in violation of the MHRA, why Kelly was terminated. Rather, MAI 38.02

as modified by the City kept the jury from getting to the question of whether there

was a lawful reason for discharge by keeping that question at arms-length and simply

limiting the jury to deciding whether Kelly was an at-will employee.

 8Kelly concedes in her brief that she was the contractual equivalent of an at-will employee of

the City.

 10
 In attempting to demonstrate nonprejudice of its modified instruction, the City

also relies on Koppe v. Campbell, 318 S.W.3d 233 (Mo. App. W.D. 2010), a quantum

meruit case. There, the MAI instruction was modified by the addition of all factors

which may be considered in determining the reasonable value of services performed.

Id. at 245. This court found that such factors were properly considered by the jury,

and, accordingly, there was no actual prejudice. Id. While the court in Koppe noted

that the modified MAI instruction actually imposed a greater burden on the party

submitting it, id. at 246-47, our case is not so similarly situated. Rather, here, the

jury was misdirected by not getting to the factual question of whether there was a

lawful reason, and not an unlawful reason, for the City to terminate Kelly. Here, the

intention of the instruction was thwarted by asking the jury to answer an entirely

different question: was Kelly an at-will employee. Notably, in Koppe, the only

instructions case cited by the City, this Court cautioned parties who consider

modifying instructions, stating: “While we do not approve of adding the additional

language to [the proposed instruction], and would not recommend that it be done in

other cases, no prejudice resulted in this case. Id. at 247.

 The City has not met its burden of demonstrating nonprejudice, nor have they

“made it perfectly clear that no prejudice ensued” by their modified 38.02 instruction.

Hence, the presumed error persists and this court must determine if any prejudicial

effect is created. Abbott, 375 S.W.3d at 109.

 MAI 38.02 is the “lawful justification” defense instruction for employment

discrimination. Gaal, 597 S.W.3d at 289-90. Hence, it is axiomatic that the lawful

 11
reason postulated in the “lawful justification” defense instruction must be a non-

discriminatory reason. As submitted by the City and approved by the trial court, the

modification to MAI 38.02 is prejudicial, for there was no non-discriminatory reason

postulated thereby. Rather than giving a non-discriminatory lawful reason why the

termination occurred, the instruction simply stated the City can take such action. In

doing so, the jury was led to believe that they must find for City as to Paragraph First

of 38.02 if they believe that “Defendant terminated Plaintiff under the Management

Agreement ‘without cause.’” The City’s submitted instruction simply did not allow

the jury to reach the question of whether a lawful reason existed for Kelly’s discharge.

Herein is where the prejudicial effect lies, for this is where the lawful reason to

discharge is to be considered by the jury, should an employer desire their lawful

reason to be considered. By removing this vital decision from the jury and replacing

it with a separate and distinct question of fact, prejudicial effect occurred.

 Further, removing the word “because” from Paragraph First in MAI 38.02 and

adding the word “under” in its place changes the complexion of the instruction

altogether. The definition of “because” is “for the reason that: SINCE.” Merriam-

Webster Dictionary (11th ed. 2020). In contrast, the definition of “under,” as used in

this instruction, is “subject to the control of, [i.e.] under the terms of the contract.”

Merriam-Webster Dictionary (11th ed. 2020) (when used as a preposition). When

applying these definitions to Paragraph First of MAI 38.02, the enormity of the

change is readily seen. Rather than the instruction stating “Defendant terminated

Plaintiff for the reason that” along with a lawful reason (such as “her job performance

 12
was unacceptable”) as stated in the pattern MAI 38.02, it is wholly changed to

“Defendant terminated Plaintiff subject to the control of the Management Agreement”

as the City’s modified 38.02 states. Thus, instead of the question being, was she

terminated for a lawful reason, it became could she be terminated under the

Management Contract; distinct questions, indeed.

 Additional prejudice is shown upon considering the Notes on Use to MAI 38.02,

which provide that the “lawful justification” instruction may be submitted “[i]f

supported by the law and the evidence.” (emphasis added). Thus, the use of MAI 38.02

is predicated on the defendant offering evidence of the lawful reason for plaintiff’s

discharge. At trial, in attempting to refute Kelly’s claims, the City offered substantial

evidence of the nature of Kelly’s alleged poor work performance, such as projects Kelly

failed to complete, and policies or procedures that Kelly was slow to understand. In

fact, all five of the City’s witnesses testified primarily to matters that allegedly

demonstrated Kelly’s deficient work performance. Yet, this evidence, which provides

a reason to give the 38.02 legal justification instruction, if at all, was not incorporated

into the pattern MAI 38.02 to make a proper instruction. Instead, the City provided

a wholly different question to the jury, whether Kelly could be discharged under the

Management Agreement, a fact which Kelly had already conceded. Where, as here,

the defendant is provided the benefit of the 38.02 converse instruction for lawful

justification, yet is able to sidestep the need to provide any lawful reason at all and

submit a wholly different, contractually-based, cause for termination, prejudice

occurs.

 13
 Finally, the prejudicial effect of Instruction 9 was furthered by the City’s

closing argument. The City repeatedly emphasized that evidence regarding Kelly’s

performance was irrelevant, despite having spent a majority of the trial discussing

and introducing evidence relating to Kelly’s poor performance. Relying on the

modified instruction, the City was able to state to the jury, “[o]ver the last week, we

spent 95 percent of your time talking about something that’s not even in the verdict

forms that you’re given.” The City’s closing argument suggested that it was irrelevant

whether the performance deficiencies it had identified in the service letter as “the

reason for [Kelly’s] termination” were actually accurate. But this ignores that

evidence that an employer’s stated reasons for discharge were pretextual can be some

of the most powerful circumstantial evidence supporting a discrimination claim:

 Evidence that an employer's explanation for its decision is “unworthy of
 credence” is one factor that “may well suffice to support liability.” “Proof
 that the defendant's explanation is unworthy of credence is simply one
 form of circumstantial evidence that is probative of intentional
 discrimination, and it may be quite persuasive.” Indeed, “rejection of
 the defendant's proffered reasons will permit the trier of fact to infer the
 ultimate fact of intentional discrimination.” And “upon such rejection,
 [n]o additional proof of discrimination is required.”

Ferguson v. Curators of Lincoln Univ., 498 S.W.3d 481, 491 (Mo. App. W.D. 2016)

(citations omitted). Despite these bedrock legal principles, however, the City’s closing

argument – relying on Instruction 9 – told the jury that Kelly’s evidence that her

purported “overall unacceptable performance” was pretextual was irrelevant. By

arguing that Kelly’s circumstantial evidence was irrelevant, the City virtually

suggested to the jury that only direct evidence of discriminatory animus could support

a verdict in Kelly’s favor.

 14
 Thus, Instruction 9 enabled the City to make such an argument, which misled

the jury as to the applicable law. “Although opening and closing statements are not

to be considered as evidence at trial, we may consider closing argument in

determining whether a contended instructional error had any prejudicial effect.”

Thompson v. Brown & Williamson Tobacco Corp., 207 S.W.3d 76, 120 (Mo. App. W.D.

2006) (citing Rudin v. Parkway Sch. Dist., 30 S.W.3d 838, 842 (Mo. App. E.D. 2000)).

 We recognize that Instruction 9 required the jury to find not only that the City

had terminated Kelly “under the Management Agreement ‘without cause,’” but also,

in paragraph “Second,” that “in doing so, neither race, age nor sex/gender was a

contributing factor.” Paragraph “Second” does not neutralize the prejudicial effect of

the erroneous wording of the first paragraph of Instruction 9. The City had

separately requested a true converse instruction, Instruction 8, which advised the

jury that its verdict must be for the City unless it found that “race, age, or sex-gender

was a contributing factor in [Kelly’s] discharge.” Given Instruction 8, all that was

added by Instruction 9 was the direction to the jury to determine whether the City

had terminated Kelly “under the Management Agreement ‘without cause.’” The

instruction as given was prejudicial in that it misled the jury in a manner that

materially affected the merits of the case. Kelly should be afforded a new trial.

 In this finding, we are reminded of the concluding paragraph of Abbott, 375

S.W.3d at 111, in which the court stated:

 In so ruling, we caution counsel to resist the temptation to inject evidentiary
 or argumentative detail into the otherwise bland statements of law contained
 in instructions in hopes of gaining some advantage. Further, the circuit court
 should be alert to such attempts lest the institutional value of pattern

 15
 instructions be lost. Identifying instructions “is a very real and vital duty in
 the administration of justice and no trial judge can abdicate judicial
 responsibilities to the discretion of the trial lawyers who prepare the
 instructions. No judge should fail in this duty upon the premise that if the
 lawyers want to create error they are free to do so.” MAI, “How To Use This
 Book,” p. LIV.

We reverse and remand to the circuit court for a new trial.

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 16